# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
June 18, 2014 Session

# MYRTLE ROBINSON ET AL. V. BAPTIST MEMORIAL HOSPITAL ET AL.

### Appeal from the Circuit Court for Shelby County
### No. CT00384207     Gina C. Higgins, Judge

---

### No. W2013-01198-COA-R3-CV - Filed July 11, 2014

---

This is a medical negligence/wrongful death case. Following their mother's death, Appellants' filed the instant lawsuit against several doctors who provided treatment to their mother. During discovery, Appellants allegedly learned that the Appellee physician had amended his original consultation report to correct a mis-diagnosis of the Decedent's condition. Appellants were granted leave to amend their complaint to add the Appellee and his medical practice as defendants to the lawsuit. The amended complaint naming the Appellees was filed some five years after the filing of the original lawsuit. Appellees moved for summary judgment on the ground that the statutes of limitations and repose barred Appellants' case. The trial court granted summary judgment, finding that the Appellants had not shown facts sufficient to establish fraudulent concealment on the part of the Appellee physician so as to toll the applicable one-year statute of limitations and three-year statute of repose under Tennessee Code Annotated Section 29-26-116. The trial court also found that Appellants had failed to exercise due diligence in discovering the alleged fraudulent concealment. Appellants appeal. For the reasons stated herein, we affirm and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and ANDY D. BENNETT, J., joined.

Al H. Thomas and Aaron L. Thomas, Memphis, Tennessee, for the appellants, Myrtle

Robinson and Willette Jeffries, as the personal representatives of Fannie Oliver Zinn.

Jennifer S. Harrison and Lauren Dunavin Callins, Memphis, Tennessee, for the appellee, Kenneth A. Okpor, M.D. and Memphis Lung Physicians, P.C.

## OPINION

In November 2005, Fannie Oliver Zinn ("Decedent") underwent treatment for endometrial cancer.  In April 2006, when Ms. Zinn was 88 years old, she was diagnosed with terminal, metastatic cancer.  Ms. Zinn opted to forego aggressive treatment, and sought only palliative care for symptomatic relief.

On or about July 19, 2006, Ms. Zinn presented to her primary physician Dr. Hassan Haddad's office, complaining of shortness of breath.  Dr. Haddad diagnosed fluid on Ms. Zinn's lungs, placed her on a diuretic and discharged her.  On or about July 20, 2006, Ms. Zinn called Dr. Haddad to report that her symptoms had not abated and had, in fact, become worse.  Dr. Haddad made arrangements for Ms. Zinn to be admitted to Baptist Memorial Hospital ("BMH").  Further examination at BHM revealed recurrent malignant pleural effusions around her lungs, which were caused by her malignant lung cancer.[1]  At BMH, Ms. Zinn underwent thoracentesis (i.e., draining fluid off the lung using a needle and local anesthetic), which provided relief.  X-rays taken before and after the thoracentesis revealed bi-lateral pleural effusions, and Ms. Zinn was admitted to BMH for further evaluation.  The radiology reports for these x-rays were dictated on July 20, 2006 at 7:58 a.m. and 9:12 a.m., and were transcribed later that day at 3:37 p.m.  According to the record, Ms. Zinn's bi-lateral pleural effusions, which caused both of her lungs to continue to fill with fluid, were a direct result of the spread of her terminal cancer.

On July 20, 2006, Dr. Kenneth A. Okpor, M.D., a pulmonologist/critical care specialist, was consulted to discuss various options for treatment.  After examining Ms. Zinn, Dr. Okpor explained three treatment options: (1) repeat thoracentesis as needed, (2) a permanent chest draining tub (Pleurex catheter) for slow and constant draining, or (3) a video assisted thoracic surgery ("VATS") pleurodesis, which involves the infusion of a talc solution into the pleural space surrounding the lungs to prevent a recurrent build-up of fluid.

---

[1] Pleural Effusions are excess fluid between the two membranes that cover the lungs (the visceral and parietal pleurae) that  separate the lungs from the chest wall. A small quantity of fluid is normally spread thinly over the visceral and parietal pleurae and acts as a lubricant between the two membranes. Any significant increase in the quantity of pleural fluid is a pleural effusion. The most common symptoms of pleural effusion are chest pain and painful breathing (pleurisy).

Dr. Okpor recommended option 3, the VATS pleurodesis.

On July 24, 2006, Ms. Zinn underwent a left-sided VATS pleurodesis, which was performed by Dr. Edward Todd Robbins and Dr. Garrettson Smith Ellis. Dr. Robbins testified that, at the time of the VATS procedure, he was aware that Ms. Zinn was suffering from bi-lateral effusions. Ms. Zinn died on July 27, 2006 as a result of complications from her operation.

After his initial examination of Ms. Zinn, on July 20, 2006, Dr. Okpor dictated a consult note at 3:37 p.m. on that day.[2] Dr. Okpor had allegedly reviewed the x-rays and report from July 20, which showed bi-lateral effusions, and his initial consultation states that: "Chest x-ray was reviewed and it showed a large left-sided pleural effusion." On August 7, 2006, after Ms. Zinn's death, Dr. Okpor logged onto the BMH website to authenticate his July 20, 2006 consult note. During his authentication, Dr. Okpor edited the original note. Specifically, in his authenticated note, he diagnosed Ms. Zinn with bi-lateral pleural effusions, whereas his original consultation note indicated only a "left-sided effusion." Although pre-authenticated versions of doctors' notes are not usually saved in the BMH system, here, Dr. Okpor's pre-authenticated version of Ms. Zinn's information was preserved because Dr. Robbins had printed a hard-copy of the consultation note in preparation for Ms. Zinn's July 24, 2006 VATS surgery. Dr. Robbins placed the copy of Dr. Okpor's pre-authenticated note in Ms. Zinn's medical record, where it was allegedly discovered by plaintiffs some five years later, *see* discussion below. Although the amendment to the original consultation note was allegedly not discovered by plaintiffs until five years after the original lawsuit was filed on July 27, 2007 (*infra*), the record indicates that the records containing Dr. Okpor's original note and the amended note were submitted to the plaintiffs in December 2008, when Dr. Robbins answered discovery by providing them with a copy of his office records, which contained Dr. Okpor's original consult report.

As discussed in more detail below, plaintiffs' case against Dr. Okpor centers on his amendment of the consultation note, and specifically his alleged change of diagnosis from "left-sided effusion," to "bi-lateral effusions." Plaintiffs contend that the VATS procedure that caused Ms. Zinn's death was counter indicated in cases of bi-lateral effusions, and that Dr. Okpor's initial mis-diagnosis resulted in her choosing to proceed with surgery that ultimately led to her death. However, plaintiffs did not name Dr. Okpor in their original lawsuit.

---

[2] We note that the date and time that Dr. Okpor dictated his consult note is the exact same date and time that the radiology reports for Ms. Zinn's x-rays were transcribed, as discussed *supra*. From our review of the record, this appears to merely be a coincidence.

On July 27, 2007, Ms. Zinn's daughters, Myrtle Robinson and Willette Jeffries (together, "Plaintiffs," or "Appellants"), as the personal representatives of Decedent's estate, filed suit against BMH, Dr. Robbins, Dr. Ellis, and Dr. Haddad in the Circuit Court at Shelby County, claiming medical malpractice. All of the original defendants filed separate motions for summary judgment. Dr. Haddad's motion for summary judgment was granted by order of February 8, 2008; Dr. Ellis was granted summary judgment by order of November 7, 2008, and BMH's motion for summary judgment was granted by order of November 26, 2008. By order of December 2, 2008, Appellants were granted leave to amend their complaint to aver a cause of action against Dr. Robbins for lack of informed consent. The December 2, 2008 order also holds Dr. Robbins' motion for summary judgment in abeyance, pending the amendment to the complaint, which was filed on March 12, 2009.

After several continuances, on August 12, 2011, Appellants filed a motion to amend their complaint a second time to add Dr. Okpor and his employer, Memphis Lung Physicians, P.C. ("MLP," and together with Dr. Okpor, "Defendants," or "Appellees") as defendants. Prior to filing their motion to amend the complaint, on July 21, 2011, Appellants sent notice, pursuant to Tennessee Code Annotated Section 29-26-121(a), to Dr. Okpor.[3] Appellants were granted leave, on August 19, 2011, to file a second amended complaint, which was entered on February 1, 2012. Pursuant to Tennessee Code Annotated Section 29-26-122, Appellants attached a certificate of good faith to their second amended complaint.[4] The second amended complaint averred medical malpractice and lack of informed consent against Dr. Robbins. Concerning Dr. Okpor and MLP, the second amended complaint states, in relevant part:

    27. On July 20, 2006, when Kenneth A. Okpor, M.D. reviewed

---

[3] Tennessee Code Annotated Section 29-26-121(a) provides:

    (a)(1) Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint based upon health care liability in any court of this state.

[4] Tennessee Code Annotated Section 29-26-122 provides, in pertinent part:

    (a) In any health care liability action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint. If the certificate is not filed with the complaint, the complaint shall be dismissed, as provided in subsection (c), absent a showing that the failure was due to the failure of the provider to timely provide copies of the claimant's records requested as provided in § 29-26-121 or demonstrated extraordinary cause. . . .

Ms. Zinn's chest x-rays . . . Dr. Okpor had a duty to comply with the recognized standard of acceptable medical care in Shelby County and to diagnose Ms. Zinn's bi-lateral pleural effusions and recommend treatment appropriate under the circumstances. 28. Dr. Okpor failed to diagnose Ms. Zinn's bi-lateral effusions and instead diagnosed only a left-sided pleural effusion. This failure was a negligent deviation from the recognized standard of care and it caused injury as follows.

29. Dr. Okport's aforementioned negligence caused the injurious VATS procedure to be performed. . . . Dr. Okpor relied on his negligent diagnosis of only a left-sided pleural effusion and recommended that Ms. Zinn undergo a left-sided VATS procedure by Dr. Robbins rather than the other options . . . such as pleurex catheter or repeat thoracentesis. Dr. Okpor's recommendation was accepted and implemented.

30. If Dr. Okpor had complied with his duty and diagnosed Ms. Zinn's bi-lateral pleural effusions, Dr. Okpor would not have recommended that Ms. Zinn undergo a left-sided VATS procedure rather than the other options. . . and Ms. Zinn would not have undergone a VATS procedure.

On September 21, 2012, the trial court denied Appellees' motion to dismiss the lawsuit on the grounds of failure to comply with the certificate of good faith and notice requirements for medical negligence cases. On October 30, 2012, Appellees filed a motion for summary judgment, along with a memorandum of law in support thereof. As the ground for their motion, Appellees alleged that Appellants' lawsuit "involved ambiguous and odd allegations of fraudulent concealment [on the part of Dr. Okpor] in order to circumvent the three year statute of repose." Appellants opposed the motion for summary judgment.

The motion for summary judgment was heard on December 5, 2012. By order of December 11, 2012, the trial court granted Appellees' motion, specifically stating, in pertinent part, that:

> [Appellees] have negated essential elements of [Appellants'] claim of fraudulent concealment. [Appellants] filed their original complaint on July 27, 2007. [Appellants] did not file suit against these [Appellees] until February 1, 2012. This Court finds that, at a minimum, [Appellants] failed to show an affirmative concealment of material fact; [Appellants] were not diligent in pursuing their claim against these [Appellees]; and,

as a matter of law, this Court finds that there is no fraudulent concealment by Defendant Dr. Kenneth Okpor. After [Appellees] successfully shifted the burden, [Appellants] failed to produce any evidence of fraudulent concealment that would toll the three-year statute of repose (set forth in T.C.A. §29-26-116(a)(3)) against these [Appellees].

The December 11, 2012 order incorporates, by reference, the court's ruling from the bench; these findings are discussed below. Because the lawsuit was still pending against Dr. Robbins, the court's order specifically states that the December 11, 2012 order is final as to Appellees pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. Thereafter, Appellants filed a Tennessee Rule of Civil Procedure 59.04 motion to alter or amend the judgment, which motion was denied by order of April 26, 2013.

Appellants appeal. They raise four issues for review, as stated in their brief:

1. Did the Circuit Court err when it ruled as a matter of law that Plaintiffs/Appellants' lawsuit against Appellee-Defendant Kenneth Okpor, M.D. was barred by the medical malpractice statute of repose codified at T.C.A. §29-26-116(a)(3) and the statute's exception for fraudulent concealment was not triggered by Dr. Okpor's alteration of the medical record which erased the evidence of his alleged negligence?

2. Did the Circuit Court err in its order granting summary judgment to Dr. Okpor based on the statute of repose when it found that "Plaintiffs failed to produce any evidence of fraudulent concealment that would toll the three-year statute of repose" even though Plaintiffs produced evidence that when Dr. Okpor "authenticated" the medical record, he edited it in a manner that erased the evidence of his alleged negligence?

3. Did the Circuit Court err in its order denying Plaintiffs' motion to alter [or amend] when it found that "Plaintiffs failed to produce any evidence of fraudulent concealment that would toll the three-year statute of repose" even though Plaintiffs produced expert medical testimony that Dr. Okpor violated the acceptable standard of professional care when he edited the medical record in a manner that erased the evidence of his alleged negligence?

4. Did the Circuit Court err in ruling as a matter of law that Plaintiffs' constructive discovery of Dr. Okpor's negligence occurred on the date in 2010 when they received a CD which contained the document evidencing the negligence?

We first note that a trial court's decision to grant a motion for summary judgment presents a question of law and is reviewed *de novo* with no presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). "This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied." *Mathews Partners, LLC v. Lemme*, No. M2008-01036-COA-R3-CV, 2009 WL 3172134, at *3 (Tenn. Ct. App. Oct. 2, 2009) (citing *Hunter v. Brown*, 955 S.W.2d 49, 50–51 (Tenn. 1977)).

We further note that the standard of review for summary judgment has changed over the years. Currently, the standard is codified at Tennessee Code Annotated Section 20-16-101. However, the statute is applicable only to claims filed after July 1, 2011. Because the instant lawsuit was filed in 2007, well before the effective date of the statute, we apply the applicable standard of review for summary judgment cases filed prior to this legislation. As discussed below, the applicable standard in this case is set out in *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008).

In the instant case, Appellees' motion for summary judgment is based upon the affirmative defense of the expiration of the one-year statute of limitations and the three-year statute of repose, which are set out in Tennessee Code Annotated Section 29-26-116 as follows:

> (a)(1) The statute of limitations in health care liability actions shall be one (1) year as set forth in § 28-3-104.
>
> *                     *                     *
>
> (3) In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant, in which case the action shall be commenced within one (1) year after discovery that the cause of action exists.

This statute of repose for medical malpractice actions provides an almost absolute limitation on the time a plaintiff has to file his or her medical malpractice claim. *Calaway*

***v. Schucker***, 193 S.W.3d 509, 515 (Tenn. 2005). The time of discovery of the injury, or the basis for the medical malpractice claim, is not relevant because the statute operates to bar an action based solely upon the date of the act or omission giving rise to the malpractice claim, regardless of when the action accrued. ***Id***; *see also* ***Braden v. Yoder***, 592 S.W.2d 896, 897 (Tenn. Ct. App. 1979) ("This three-year ceiling is unrelated to the accrual of a cause of action commencing not on discovery but rather at the date of the allegedly negligent act."). Despite the harsh result that often ensues under this statute, our Supreme Court has held that, in enacting Tennessee Code Annotated Section 29-26-116(a)(3), our Legislature intended "to place an absolute three-year bar beyond which no medical malpractice right of action may survive." ***Mills v. Wong***, 155 S.W.3d 916, 920 (Tenn. 2005). Because of the legislative intent to provide certainty as to the length of time a healthcare provider may be subject to potential liability, ***Cronin v. Howe***, 906 S.W.2d 910, 913 (Tenn. 1995), the fraudulent concealment exception to the strict time limit imposed by the statute of repose is, necessarily, narrow and specific.

The standard of review where the party seeking summary judgment is a defendant relying on an affirmative defense, such as the statute of limitations or repose, is well settled. A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." ***Green v. Green***, 293 S.W.3d 493, 513 (Tenn. 2009) (citing ***Martin v. Norfolk S. Ry.***, 271 S.W.3d 76, 83 (Tenn. 2008); ***Amos v. Metro. Gov't of Nashville & Davidson County***, 259 S.W.3d 705, 710 (Tenn. 2008)). "When ascertaining whether a genuine dispute of material fact exists in a particular case, the courts must focus on (1) whether the evidence establishing the facts is admissible, (2) whether a factual dispute actually exists, and, if a factual dispute exists, (3) whether the factual dispute is material to the grounds of the summary judgment." ***Id***. Not every factual dispute requires the denial of a motion for summary judgment. ***Id***. at 514. To warrant denial of a motion for summary judgment, the factual dispute must be material, meaning "germane to the claim or defense on which the summary judgment is predicated." ***Id***. (citing ***Eskin v. Bartee***, 262 S.W.3d 727, 732 (Tenn. 2008); ***Luther v. Compton***, 5 S.W.3d 635, 639 (Tenn. 1999)).

When the party moving for summary judgment is a defendant asserting an affirmative defense, he or she may shift the burden of production by alleging undisputed facts that show the existence of the affirmative defense. ***Hannan***, 270 S.W.3d at 9 n. 6. "If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." ***Martin***, 271 S.W.3d at 84 (citing ***McCarley v. W. Quality Food Serv.***, 960 S.W.2d 585, 588 (Tenn. 1998);

***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn. 1993)). The nonmoving party may satisfy its burden of production by: (1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P 56.06; ***Id.*** (citing ***McCarley***, 960 S.W.2d at 588; ***Byrd***, 847 S.W.2d at 215 n.6).

The resolution of a motion for summary judgment is a matter of law, which we review *de novo* with no presumption of correctness. ***Martin***, 271 S.W.3d at 84. However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." ***Id***. (citing ***Staples v. CBL & Assocs., Inc.***, 15 S.W.3d 83, 89 (Tenn. 2000)). Summary judgment is appropriate "when the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion-that the moving party is entitled to a judgment as a matter of law." ***Green***, 293 S.W.3d at 513 (citing ***Griffis v. Davidson County Metro. Gov't***, 164 S.W.3d 267, 283–84 (Tenn. 2005); ***Pero's Steak & Spaghetti House v. Lee***, 90 S.W.3d 614, 620 (Tenn. 2002)). We note, however, that, even if the moving party shifts the burden of production by showing that undisputed facts evidence the existence of an affirmative defense, "the burden remains on the moving party to prove the affirmative of its defense." ***McMahon v. Sevier County***, No. E2005-02028-COA-R3-CV, 2007 WL 1946650, at *3 (Tenn. Ct. App. July 3, 2007).

## Fraudulent Concealment and the Tolling of the Statute of Limitations

"Statutes of limitations promote fairness and justice." ***Redwing v. Catholic Bishop for Diocese of Memphis***, 363 S.W.3d 436, 457 (Tenn. 2012) (citing ***Pero's Steak & Spaghetti House v. Lee***, 90 S.W.3d 614, 621 (Tenn. 2002)). They "reflect 'a societal choice that actions must be brought within a certain time period.'" ***Id***. (quoting ***Parrish v. Marquis***, 172 S.W.3d 526, 532 (Tenn. 2005)). "They are based on the presumption that persons with the legal capacity to litigate will not delay bringing suit on a meritorious claim beyond a reasonable time." ***Id.*** (citing ***Hackworth v. Ralston Purina Co.***, 214 Tenn. 506, 510, 381 S.W.2d 292, 294 (1964)).

"A defense predicated on the statute of limitations triggers the consideration of three components—the length of the limitations period, the accrual of the cause of action, and the applicability of any relevant tolling doctrines." ***Redwing***, 363 S.W.3d at 457. "The length of the limitations period is perhaps the most straightforward of the three elements," and it is determined by considering the "gravamen" of the complaint. ***Id.*** Here, the one-year statute of limitations for medical negligence cases is set forth in Tennessee Code Annotated Section

29-26-116(a)(1), *supra*.

The second component, the concept of accrual, "relates to the date on which the applicable statute of limitations begins to run." ***Redwing***, 363 S.W.3d at 457 (citing ***Columbian Mut. Life Ins. Co. v. Martin***, 175 Tenn. 517, 526, 136 S.W.2d 52, 56 (1940)). Under the current discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has either actual or constructive knowledge of a claim. ***Id***. at 459.[5] However, the discovery rule does not allow the plaintiff to delay filing suit until he knows the full extent of his damages, or the specific type of legal claim he has. ***Id.*** Constructive or "inquiry" notice occurs "when the plaintiff has actual knowledge of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of wrongful conduct." ***Id***. (internal quotation and alteration omitted). In other words, "inquiry notice 'charges a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed.'" ***Id***. (quoting ***Sherrill v. Souder***, 325 S.W.3d 584, 593 n. 7 (Tenn. 2010)). Once the plaintiff "gains information sufficient to alert a reasonable person of the need to investigate the injury, the limitation period begins to run." ***Id***.

As for the third component, there are various tolling doctrines that can suspend or extend the running of the limitations period. ***Redwing***, 363 S.W.3d at 459. As is relevant to this case, Tennessee courts have long recognized that the doctrine of fraudulent concealment will toll the running of a statute of limitations. ***Id***. at 461; Tenn. Code Ann. § 29-26-116(a)(3). The doctrine of fraudulent concealment applies to toll the statute of limitations when "'the defendant has taken steps to prevent the plaintiff from discovering he [or she] was injured.'" ***Id***. at 462 (quoting ***Fahrner v. SW Mfg., Inc***.,48 S.W.3d 141, 146 (Tenn. 2001).[6] In other words, fraudulent concealment applies "to circumstances in which the

---

[5] Under the traditional accrual rule, a cause of action accrued and the applicable statute of limitations began to run when the plaintiff had a cause of action and the right to sue, even though the plaintiff may have had no knowledge of his right to sue, or the facts out of which that right arose. ***Redwing***, 363 S.W.3d at 457. However, as time passed, it became apparent that the policies furthered by statutes of limitations should give way when the interests of justice would be served by permitting the pursuit of legitimate claims. ***Id***. at 458. As a result, "courts and legislatures began to recognize exceptions to the traditional accrual rules that 'take the sting out of a statute of limitations for equitable reasons.'" ***Id***. (quoting Adam Bain & Ugo Colella, *Interpreting Federal Statutes of Limitations*, 37 Creighton L.Rev. 493, 502 (2004)). In 1974, the Tennessee Supreme Court adopted the "discovery rule" in response to the harsh results of the traditional accrual rule, in circumstances in which the injured party was unaware of the injury. ***Id***. In short, "the discovery rule was developed to prevent plaintiffs from being barred from filing a claim before they even knew it existed." ***Young v. Enerpac***, 299 S.W.3d 815, 817 (Tenn. Ct. App. 2009).

[6] "As it currently exists in Tennessee, the doctrine of fraudulent concealment is aligned with the discovery rule." ***Redwing***, 363 S.W.3d at 462. For instance, "[i]n a discovery rule case, the plaintiff may

-10-

defendant purposefully engages in the conduct intended to conceal the plaintiff's injury from the plaintiff." ***Id***.[7] A plaintiff invoking the fraudulent concealment doctrine must allege and prove four elements:

> (1) that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so;
> (2) that the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence;
> (3) that the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and
> (4) that the defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry.

*Id.* at 462–63 (footnotes omitted). "The statute of limitations is tolled until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim." *Id*. at 463. "At the point when the plaintiff discovers or should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim, the original statute of limitations begins to run anew, and the plaintiff must file his or her claim within the statutory limitations period." *Id*.

As noted above, "[f]or the purposes of both the discovery rule and the doctrine of fraudulent concealment, the pivotal issue is whether [the plaintiff] would have discovered the [defendant's] allegedly wrongful acts had he exercised reasonable care and diligence." *Id*. at 466. "Whether the plaintiff exercised reasonable care and diligence in discovering the injury or wrong is usually a fact question for the jury to determine." ***Wyatt v. A-Best Co.***, 910 S.W.2d 851, 854 (Tenn. 1995); *see also **Gerdau Ameristeel, Inc. v. Ratliff***, 368 S.W.3d 503,

---

claim that the defendant intentionally prevented him from discovering his injury," and if that claim is proved true, "the doctrine of fraudulent concealment applies." *Id*. at 462 n.26. "For the purposes of both the discovery rule and the doctrine of fraudulent concealment, the pivotal issue is whether [the plaintiff] would have discovered the [defendant's] allegedly wrongful acts had he exercised reasonable care and diligence." *Id*. at 466.

[7] The doctrine of fraudulent concealment also applies "to circumstances in which the defendant engages in conduct intended to conceal the identity of the person or persons who caused the Plaintiff's injury from the plaintiff." ***Redwing***, 363 S.W.3d at 462.

509 (Tenn. 2012). "However, where the undisputed facts demonstrate that no reasonable trier of fact could conclude that a plaintiff did not know, or in the exercise of reasonable care and diligence should not have known, that he or she was injured as a result of the defendant's wrongful conduct, Tennessee case law has established that judgment on the pleadings or dismissal of the complaint is appropriate." *Schmank v. Sonic Automotive, Inc.*, No. E2007-01857-COA-R3-CV, 2008 WL 2078076, at *3 (Tenn .Ct. App. May 16, 2008) (citing *Roe v. Jefferson,* 875 S.W.2d 653, 658 (Tenn. 1994) (affirming summary judgment where "no reasonable trier of fact could find that [plaintiff] was unaware that she had suffered an injury for purposes of the discovery rule"); *Stanbury v. Bacardi*, 953 S.W.2d 671, 677–78 (Tenn. 1997) (affirming dismissal of complaint where plaintiff held to have been "aware of facts sufficient to put a reasonable person on notice that she had suffered an injury" despite her assertion that she did not discover her claim until later); *Brandt v. McCord*, No. M2007-00312-COA-R3-CV, 2008 WL 820533, at *4 (Tenn. Ct. App. Mar. 26, 2008) (affirming dismissal of complaint where facts established "as a matter of law" that plaintiffs had enough knowledge to put a reasonable person on notice, despite plaintiffs' invocation of discovery rule)).

With the foregoing principles in mind, we turn to the record. The trial court's determination that summary judgment was appropriate in this case was based upon its conclusion that there was no fraudulent concealment on the part of Dr. Okpor. The court's reasoning, as set out in its ruling from the bench (which is incorporated into the court's order), is as follows:

> I don't think the [Appellants] ha[ve] been able to show that there was any affirmative concealment of any material fact or material evidence that would go to toll the statute
>
> *              *              *
>
> What the defense expert says is not refuted anywhere. [Doctors] have an opportunity to go in and edit a record, clean it up. So, there is nothing to say there was an attempt [on Dr. Okpor's part] to conceal, or by any stretch of the imagination anything like fraudulent concealment.
>
> *              *              *
>
> And this Court cannot take judicial notice of why Dr. Okpor changed his records. All we have is his statement, he changed his orders or made additions to his records, got to a point where one is a final version as opposed to a preliminary

-12-

version, the Court cannot take judicial notice of any of that. All I have is his statement why he did what he did.

In addition to finding that there was not proof of fraudulent concealment, the trial court also noted that the Appellants had not exercised due diligence in discovering the pertinent evidence:

> Then . . . the question becomes whether or not the [Appellants] w[ere], in fact, diligent in attempting to locate any of this fraudulent concealment or to file a lawsuit once it was determined.
>
> Well, it was very evident that . . . the last date plaintiff received those records in July 2010. . . . [Appellants] had [control of] those records. . . . There w[ere] gratuitous records that fell out of the sky and were in [Appellants'] care[?]
>
> If this argument were allowed to stand. . . [y]ou would be allowed to come back ten years later and say, look what we found in the records.
>
> There was nothing [Appellants] say[] [they] w[ere] required to do, it just happened, just a happenstance. [Appellants] w[ere] preparing for a deposition, looked at the records, and started making some connections that [they] had not previously made.
>
> Even in [Appellants'] memorandum of law, [they] state[] that [they] did not study the notes in depth because [they] had already finished all versions of the notes. [Appellants] w[eren't] aware that [they] needed to do anything differently.
>
> Well, [Appellants], I don't think, can just rest [o]n [their] laurels and say, I'm done, this is all I'm required to do, this is the end of it. If [Appellantss] had been able to show something with more teeth in it to indicate there had been some type of concealment, I think this Court would be more inclined to look behind why [Appellants] w[eren't] as diligent reviewing records in its custody and control.
>
> Then the [Appellants] argue[] they can't even tell the Court when they actually started looking at the records. So, you get records and don't bother to look at them. . . .

> \*                              \*                              \*

-13-

There was one other portion on that. [Appellants] make[] the argument with regard to constructive notice as opposed to actual notice. Now, based on this argument that [Appellants] say[] is not constructively when we received the records, so [Appellants] had all these records for three years, d[id] nothing about it, and still [argue that they] still [cannot] be held accountable for what is in the records.

I don't think any rule, especially rules that deal with limitations, statutes of repose, contemplate plaintiff can sit, and be to that extent dilatory, having the records in his care and do nothing with them. So, I can't buy that argument either.

Based upon the foregoing statements by the trial court, it is clear that the grant of summary judgment was based on two grounds. First, the trial court held that the Appellants had failed to aver facts sufficient to show that Dr. Okpor fraudulently concealed any material fact, or to create a dispute of fact as to fraudulent concealment. Second, the court held that the Appellants' failure to discover the amendment to Dr. Okpor's consultation note, despite the fact that Appellants had discovery materials containing the information as of December 2008, represents a lack of diligence in discovering the alleged injury, which requires summary dismissal of the case against Dr. Okpor.

## A. Evidence of Fraudulent Concealment

As set out above, the one-year statute of limitations for medical negligence cases also contains a three-year statute of repose. Where, as in the instant case, a statute of repose defense has been asserted and established, the burden of proof shifts to the plaintiff to establish the exception to the statute being claimed. *Smith v. Southeastern Properties, Ltd.*, 776 S.W.2d 106, 109 (Tenn. Ct. App.1989); *Stockburger v. Ray*, 488 S.W.2d 378, 382 (Tenn. Ct. App.1972). The burden on a plaintiff to establish fraudulent concealment so as to toll the statute of limitations was discussed by our Supreme Court in the case of *Benton v. Snyder*, 825 S.W.2d 409 (Tenn. 1992) as follows:

In order to meet the burden, a plaintiff who seeks to toll a statute of limitations on the ground of fraudulent concealment must prove that the cause of action was known to and fraudulently concealed by the defendant. *Ray v. Scheibert*, 224 Tenn. (2 Pack) 99, 104, 450 S.W.2d 578, 580 (1969). Knowledge on the part of the physician of the facts giving rise to a cause of action is an essential element of fraudulent concealment. *Ray v. Scheibert*, 484 S.W.2d 63, 72 (Tenn.

-14-

App.1972). Concealment is also an essential element and it may consist of withholding information or making use of some device to mislead, thus involving act and intention. ***Patten v. Standard Oil Co. of Louisiana***, 165 Tenn. (1 Beeler) 438, 443, 55 S.W.2d 759, 761 (1933).

Generally, a plaintiff seeking to establish fraudulent concealment must prove that the defendant took affirmative action to conceal the cause of action and that the plaintiff could not have discovered the cause of action despite exercising reasonable diligence. ***Vance v. Schulder***, 547 S.W.2d 927, 930 (Tenn.1977). Generally, the affirmative action on the part of a defendant must be something more than mere silence or a mere failure to disclose known facts. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry, or else there must be a duty resting on the party knowing such facts to disclose them. ***Patten v. Standard Oil Co. of Louisiana***, 165 Tenn. (1 Beeler) 438, 443, 55 S.W.2d 759, 761 (1933).

***Benton***, 825 S.W.2d at 414.

As discussed above, the alleged negligence in this case occurred in July 2006, which was more than five years before Appellants amended their complaint to add Appellees to the lawsuit. Accordingly, the statute of limitations and the statute of repose had both expired by the time Dr. Okpor was added to the lawsuit. Therefore, the burden was on Appellants to show that Dr. Okpor's actions constituted fraudulent concealment. Portions of Appellants' attorney's argument at the hearing on the motion for summary judgment are helpful to understand Appellants' position on the fraudulent concealment issue:

> All doctors must authenticate a record. A doctor dictates a record, a transcriptionist transcribes it. I believe a doctor has thirty days . . . where the doctor must go in and look at the transcription and verify it was transcribed correctly. . . .
>
> \*                                        \*                                        \*
>
> [Appellants] don't have to have an expert come in and use the words "fraudulent concealment." It's our position that if we show the Court the original diagnosis, which is the basis of our cause of action, and we show now the authenticated version, which totally erases the first, totally erases the first diagnosis

which is the basis of the cause of action, then that by definition is fraudulent concealment.

The fact that Dr. Okpor says, wait a minute, I have to authenticate the records, I have a legal right to go do whatever I want to in the records, our position is that even if you have some legal right to do it, it still is a concealment.

In other words, for it to be fraudulent concealment, do we have to point to an act that was legally wrong in order to satisfy the statute of repose exception of fraudulent concealment?

It is undisputed in the record, and all of the deposed physicians testified, that it is routine procedure for BMH physicians to authenticate their initial consult notes. The record, however, does not indicate whether it is routine for physicians to change a previous diagnosis in the authenticated version of the report. As noted by the trial court, Dr. Okpor stated that his action in amending the original report was not done for purposes of concealing anything, but was done as part of his routine practice:

My original consult report was a summary for Ms. Zinn's immediate, subsequent treating physicians. The final ("authenticated") report is more detailed, thorough consult that, once "signed off" on by me, becomes a permanent part of the patient's medical record. This is routinely done on most or all patients, and is not a fraudulent editing of the medical records.

Appellants' expert, Dr. Murray J. Gilman, in his amended affidavit, seems to contradict Dr. Okpor's assertion, stating, in relevant part, that:

10.    When Dr. Okpor authenticated the "Final Copy" on 8/7/2006, the acceptable standard of professional care prohibited him from amending the record in the manner in which he did, because it caused the record to show that he diagnosed Ms. Zinn[] 7/20/2006 as having "a large left pleural effusion with a slightly smaller right effusion."

Based upon the foregoing statements, Appellants contend that a reasonable jury could infer that Dr. Okpor's actions were not routine, and that the change he made, i.e., left-sided effusion to bi-lateral effusions, was made to conceal the fact that he had initially mis-diagnosed Ms. Zinn's condition. At the summary judgment stage, we must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Martin*, 271 S.W.3d at 84. Appellants contend

-16-

that Dr. Gilman's testimony creates a dispute of material fact as to whether Dr. Okpor's action in erasing the initial version of his consult note was a violation of the acceptable standard of care, which would allow an inference of fraudulent concealment. Dr. Okpor's testimony was that his change of diagnosis from the original report to the final copy was routine; Dr. Gilman states that such modification was not routine, and that the standard of professional care precluded such diagnostic modifications. Construing these facts in favor of Appellants, as the nonmoving party, we must take Dr. Gilman's statement as true. Then, giving all reasonable inference in favor of the Appellants, if Dr. Okpor's amendment was against the recognized standard of professional care, then one might reasonably infer that his purpose in deviating from that standard of care was more than mere mistake, but was an attempt to hide his original incorrect diagnosis. The inference is somewhat tenuous, but it is not outside the realm of reasonableness, and so we conclude that the trial court erred in granting summary judgment on the ground of lack of evidence of fraudulent concealment.

However, our inquiry does not end here. Fraudulent concealment in medical negligence cases also requires the plaintiff to show, as a *prima facie* element, that "the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence." **Redwing**, 363 S.W.3d 462. It is on this criterion that Appellants' case fails.

### B. Appellants' Diligence in Discovering Dr. Okpor's Amendment to the Report
In **Redwing**, our Supreme Court stated:

> Plaintiffs asserting the doctrine of fraudulent concealment to toll the running of a statute of limitations **must demonstrate that they exercised reasonable care and diligence in pursuing their claim**. The statute of limitations is tolled until the plaintiff discovers or, **in the exercise of reasonable diligence, should have discovered** the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim. At the point when the plaintiff discovers **or should have discovered the defendant's fraudulent concealment or sufficient facts to put the plaintiff on actual or inquiry notice of his or her claim, the original statute of limitations begins to run anew, and the plaintiff must file his or her claim within the statutory limitations period**.

**Redwing**, 363 S.W.3d at 463 (emphasis added).

There is some dispute in the record as to when the Appellants received the records

from Dr. Robbins that contained the original, unauthenticated, version of Dr. Okpor's report. Appellees contend that this information was contained in discovery materials tendered to Appellants in December of 2008. Appellants contend that the relevant records were not received until July 22, 2010. The record indicates that Appellants received several sets of records from Dr. Robbins. As stated in Appellants' response in opposition to Appellees' motion for summary judgment:

> 10. On 8/6/2008, Plaintiffs took the deposition of Defendant Dr. Todd Robbins. Dr. Robbins testified using the official Baptist Hospital medical chart which only contained the "authenticated" version of Dr. Okpor's 7/20/2006 consult note. . . .
>
> 11. On 12/17/2008, Dr. Robbins sent more records from other providers. . . .
>
> 12. On 5/9/2009 Dr. Robins sent more records from other providers. . . .
>
> 13. On or about 7/19/2010. Dr. Robbins sent Plaintiffs another CD disc. . . . Exhibit 12 [] includes a picture of the disc showing a "burn date" of "7-22-2010." Exhibit 12 also includes a picture of a computer screen showing the files contained on the disc. **Among the files is one that is named "Robbins 00697.pdf" that was digitally created on "4/21/2009 2:10 p.m."** Exhibit 12 also includes the twelve scanned pages that make up the file named "Robbins 00697.pdf." On the last two pages are the pre-authenticated, transcribed consult report of Kenneth Okpor, M.D. . . .

Appellants' argument is that they could not have discovered the fact that Dr. Okpor amended his original diagnosis until at least July 22, 2010, which was the date the disc containing the unauthenticated report was allegedly produced. Appellees, in their statement of undisputed material facts in support of the motion for summary judgment, state that the relevant information was in Appellants' custody as early as December 17, 2008:

> Plaintiffs' counsel received Fannie Oliver Zinn's full and complete medical records from Defense counsel on December 17, 2008, which included Dr. Okpor's original consult report as well as the authenticated report. . . .

This dispute, at the summary judgment stage, must be resolved in favor of the Appellants' as the nonmoving party. Accordingly, we must assume that the Appellants' received Dr. Okpor's original report in the July 22, 2010 disc.[8]

In their response in opposition to summary judgment, Appellants concede that they did not look at the disc's contents until "some point after" July 22, 2010:

> At some point after Plaintiffs received the "7-22-2010" CD disc, they perused the records to see if there was new and valuable information. The file named "Robbins 00697.pdf" was interesting in that it contained unauthenticated versions of the dictated and transcribed notes of Drs. Robbins, Haddad, and Okpor. Plaintiffs had never seen such records before. Plaintiffs noticed that the notes contained blanks apparently representing the parts of the dictation that the transcriber was unable to decipher. Plaintiffs did not study the notes in depth because Plaintiffs already had the finished versions of all those notes. Plaintiffs were not aware that they needed to be looking for fraudulently concealed mis-diagnosis.

Knowledge of facts sufficient to give notice of the injury and the fact that the injury was the result of the wrongful or tortious conduct of another is "variously referred to as 'constructive notice' or 'inquiry notice.'" *Redwing*, 363 S.W.3d at 459. The plaintiff is deemed to have constructive notice or inquiry notice when the plaintiff "in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn.1998). Accordingly, it is immaterial that the Appellants delayed their examination of the July 22, 2010 disc; the gravamen is the fact that they had the disc in their possession and could have perused it at latest on July 22, 2010.

From the record, and interpreting the facts in favor of Appellants, we can only conclude that Appellants had all of the relevant information at their disposal by July 22, 2010, so as to be charged with constructive notice of any alleged fraudulent concealment as of that date. Therefore, under Tennessee Code Annotated Section 29-26-116(a)(3), if the Appellants "discover[ed,] [or should have discovered,] that the cause of action existed" on

---

[8] As set out above, Appellants state that they received the 7/22/2010 disc on or about 7/19/2010; however, because the disc (as evidenced by the photo of the disc in the record) was burned on 7/22/2010, we will infer that the disc could not have been in Appellants' custody prior to 7/22/2010, the date it was created.

July 22, 2010, the one-year statute of limitations would begin to run on July 22, 2010, and would expire on July 22, 2011.

However, because this is a medical negligence case, Appellants were required to send notice to Appellees prior to filing the lawsuit pursuant to Tennessee Code Annotated Section 29-26-121. The record shows that Appellants complied with the notice requirement when they sent the statutory notice to Appellees by letter dated July 21, 2011. Upon satisfaction of the notice requirement, Tennessee Code Annotated 29-26-121(c) extends the statute of limitations for 120 days:

> When notice is given to a provider as provided in this section, the applicable statutes of limitations and repose shall be extended for a period of one hundred twenty (120) days from the date of expiration of the statute of limitations and statute of repose applicable to that provider.

Importantly, Tennessee Code Annotated 29-26-121(c) extends the statute of limitations for 120 days "from the date of expiration of the statute of limitations. . . ." So, having satisfied the notice requirement, the applicable statute of limitations in this case would be extended for 120 days past July 22, 2011, which would be November 19, 2011. It is undisputed that Appellants did not file their complaint against Appellees until February 1, 2012.[9] Accordingly, under the most favorable reading of the facts, and giving every inference in their favor, the Appellants case was filed well outside the adjusted statutes of limitations and repose. This is fatal to their lawsuit, and summary judgment was correct on this ground.

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for such further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed to the Appellants, Myrtle Robinson and Willette Jeffries, and their surety.

_____
J. STEVEN STAFFORD, JUDGE

---

[9] Although the record indicates that the Appellants were granted leave to file the second amended complaint on August 19, 2011, the amended complaint was not, in fact, filed until February 1, 2012. There is no explanation in the record for the delay between the granting of leave to amend and the actual filing date of the amended complaint. Regardless, it is the filing of the complaint that, absent extenuating circumstances not present in this case, commences a lawsuit for purposes of the tolling the statute of limitations. Tenn. R. Civ. P. 3.