IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 31, 2018 Session

## DAWN W. KINARD ET AL. v. NATIONSTAR MORTGAGE LLC ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-14-1266-1  Walter L. Evans, Chancellor**

_____

### No. W2017-01131-COA-R3-CV

_____

This appeal involves various issues related to a mortgage loan transaction and loan modification efforts.  The plaintiffs' complaint, which was filed just a few days before a scheduled foreclosure, asserted multiple claims for relief, including breach of contract, breach of the covenant of good faith and fair dealing, and violation of the Truth-in-Lending Act.  The trial court ultimately dismissed all claims at summary judgment in the defendants' favor.  For the reasons stated herein, we affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**
**in Part, Reversed in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Webb A. Brewer, Memphis, Tennessee, for the appellants, Dawn W. Kinard, and William E. Kinard.

Lauren Paxton Roberts and J. Anne Tipps, Nashville, Tennessee, for the appellees, NationStar Mortgage, LLC, First Horizon National Corporation, and The Bank of New York Mellon fka Bank of New York.

### OPINION

### BACKGROUND AND PROCEDURAL HISTORY[1]

The genesis of this case is traceable to January 24, 2006, when Dawn and William Kinard ("the Kinards") refinanced their home in Collierville, Tennessee.  On that date,

_____

[1] Some of the facts outlined herein, most of which are taken from the parties' summary judgment papers, were "undisputed for purposes of summary judgment only."

the Kinards executed a fifteen-year promissory note in the amount of $694,875.00, as well as a deed of trust that secured their debt obligation. The Kinards' loan, which was obtained through First Horizon Home Loan Corporation ("First Horizon"), carried a fixed interest rate of 6.0%.

Around 2009, the Kinards began to experience difficulty in making their scheduled note payments. The downturn in the national economy had presented a number of challenges to their family businesses, and the Kinards accordingly explored efforts to secure payment relief from First Horizon. Although they initially sought to convert their loan to a thirty-year mortgage, the Kinards were unable to get a concrete response to that request. However, when a First Horizon representative later suggested that the Kinards should apply for a loan modification, they did so.

The Kinards pursued a loan modification by taking several actions. In addition to submitting financial information to First Horizon that had allegedly been requested of them, the Kinards withheld certain loan payments. With respect to this latter action, the Kinards claim that a First Horizon representative informed them that a modification was not possible if their loan payments were current.

After initially withholding payments and with still no decision from First Horizon regarding their request for a loan modification, the Kinards began to worry that they were getting too far behind on their mortgage. They tendered a substantial payment to bring the loan current, but they were then allegedly instructed to make no more regular payments pending the decision on the loan modification application. Mrs. Kinard specifically claims that a First Horizon representative instructed her that she would be told when and how much she should resume paying. Following this alleged instruction, payments were once again withheld.

The Kinards subsequently sent several loan modification packets to First Horizon as instructed. According to Mrs. Kinard, new packets were sent when old packets were deemed outdated. However, when Mrs. Kinard made a number of calls to get apprised about the status of the modification application, she allegedly could get no information.

It should be noted that, notwithstanding the alleged oral instruction to withhold payments, subsequent written correspondence plainly indicated that the Kinards' duty to make loan payments was not altered. In a letter from First Horizon dated November 10, 2010, following the Kinards' request for a loan modification, the Kinards were informed in relevant part as follows:

> We have received your workout package for review. . . . Please be advised that:

- Collection and/or foreclosure activity will continue on your account until such time that a workout has been completed.

- Late charge fees may also continue to be assessed.

- Your obligation to make payments is not suspended while we review the submission[.]

In the summer of 2011, the Kinards learned that their loan was being "sold" to Nationstar Mortgage LLC ("Nationstar") and that Nationstar would soon begin servicing the loan. Servicing of the loan was eventually transferred to Nationstar effective August 15, 2011. A "Notice of Assignment, Sale, or Transfer of Servicing Rights" was provided to the Kinards by letter dated August 25, 2011.

After servicing transferred to Nationstar, the Kinards found another source to refinance their loan. As a result, they made multiple requests for payoff figures and remained in frequent contact with Nationstar representatives about the status of their application for a loan modification and their requests for payoff information. According to the Kinards, however, Nationstar was unresponsive and consistently failed to provide the requested information.

Nationstar eventually initiated foreclosure proceedings, and a foreclosure sale was scheduled for August 26, 2014. The present litigation ensued in response to the threatened foreclosure. On August 21, 2014, the Kinards filed a "Petition to Enjoin Foreclosure Sale and Complaint for Damages" in the Shelby County Chancery Court. In addition to seeking injunctive relief with regard to the foreclosure, the complaint asserted the following claims against First Horizon and/or Nationstar: violation of the Fair Debt Collection Practices Act, breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, intentional or negligent misrepresentation, and violation of the Tennessee Consumer Protection Act. The Kinards also sought to recover a judgment against the Bank of New York Mellon for an alleged violation of the Truth-in-Lending Act ("TILA"). In advancing their TILA claim, the Kinards asserted that they had learned of a change in ownership of their mortgage to Bank of New York Mellon but had not been given notice of the transfer as required by law. A temporary restraining order enjoining the foreclosure was entered in response to the filing of the complaint, and on September 4, 2014, the temporary restraining order was extended through entry of a consent order.

On July 8, 2016, Nationstar, First Horizon, and the Bank of New York Mellon filed a joint motion for summary judgment. The motion requested that the Kinards' complaint be dismissed in its entirety. A statement of undisputed material facts was submitted contemporaneously to the filing of the defendants' motion, and on July 11,

2016, the defendants jointly filed a supporting memorandum of facts and law. The Kinards filed a response to the defendants' summary judgment motion on October 24, 2016. On the same date, they filed a response to the defendants' statement of undisputed material facts, as well as a statement of additional undisputed material facts. The Kinards' filings were soon followed by additional fillings submitted on behalf of the defendants. On November 1, 2016, the defendants filed a reply in support of their summary judgment motion and also submitted a response to the Kinards' statement of additional undisputed material facts.

A hearing on the defendants' motion for summary judgment was held on November 4, 2016. The motion was taken under advisement following the hearing, and on April 10, 2017, the Chancery Court entered its "Findings of Fact and Conclusions of Law," wherein it concluded that the defendants' motion for summary judgment should be granted. A formal "Final Order and Judgment" was later entered on April 28, 2017. In its April 28 order, the Chancery Court dismissed the Kinards' claims against the defendants with prejudice. This appeal followed.

## ISSUES PRESENTED

In their appellate brief, the Kinards raise the following issues for our review, which we rephrase and reorder, as follows:

1. Whether the Chancery Court erred in dismissing their claims for breach of contract and breach of the covenant of good faith and fair dealing.

2. Whether the Chancery Court erred in dismissing their misrepresentation claims.

3. Whether the Chancery Court erred in dismissing their claim for promissory estoppel.

4. Whether the Chancery Court erred in dismissing their TILA claim.

## STANDARD OF REVIEW

At issue in this appeal is the propriety of the Chancery Court's grant of summary judgment in the defendants' favor. We review summary judgment decisions de novo and afford no presumption of correctness to the trial court's determination. *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703 (Tenn. 2008) (citations omitted). In determining whether a grant of summary judgment is proper, we are obligated to make a fresh determination that the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012) (citations omitted). By rule, a motion for summary judgment should only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

"The moving party has the ultimate burden of persuading the court that . . . there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." *Town of Crossville Hous. Auth. v. Murphy*, 465 S.W.3d 574, 578 (Tenn. Ct. App. 2014) (citation omitted). If the moving party makes a properly supported motion for summary judgment, the burden of production shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. *Id.* (citation omitted).

The Tennessee Supreme Court has recently explained the proper framework for evaluating summary judgment orders in its decision in *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235 (Tenn. 2015). Consequently, our review is guided by the following standards:[2]

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] ... supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a

---

[2] We apply the *Rye* standards even though the case was filed after July 1, 2011. *See Am. Heritage Apartments, Inc. v. Hamilton Cnty. Water & Wastewater Treatment Auth.*, 494 S.W.3d 31, 39-40 (Tenn. 2016) (noting that although the trial court considered the motion for summary judgment pursuant to the standard set forth in Tennessee Code Annotated section 20-16-101 because the lawsuit had been filed after July 2011, the *Rye* standards applied); *Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 896 (Tenn. 2016) (noting that the *Rye* standards do, in fact, apply to cases commenced after July 1, 2011).

genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65 (emphasis in original).

## DISCUSSION

### *Breach of Contract/Breach of the Covenant of Good Faith and Fair Dealing*

We first turn our attention to the Kinards' contract-based claims. According to the Kinards, they have valid claims for breach of contract and breach of the covenant of good faith and fair dealing against both First Horizon and Nationstar. We will deal with the allegations against each defendant separately.

#### First Horizon

In their complaint, the Kinards contended that First Horizon was liable for breach of contract by transferring the servicing of their loan without making a decision on their loan modification request. In advancing this claim, the Kinards specifically asserted that First Horizon had made a "binding and enforceable agreement to process a loan modification request . . . and to render a decision on the modification request." The Kinards also claimed that First Horizon had breached the covenant of good faith and fair dealing associated with their loan transaction by, among other things, "never providing meaningful notification . . . regarding their approval or denial for loan modifications."

When the Chancery Court concluded at summary judgment that the Kinards could not recover on these claims, it reasoned as follows:

5. First Horizon is entitled to summary judgment on the Plaintiffs' breach of contract claim because there can be no claim for breach of contract in the absence of a valid and enforceable contract and because the terms of the alleged agreement entered into between First Horizon and the Plaintiffs were too vague to support the existence of a valid and enforceable contract.

6. First Horizon is entitled to summary judgment as a matter of law on the Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing because there is no cause of action for breach of the implied covenant of good faith and fair dealing absent a valid claim for breach of contract and because the terms of the alleged agreement entered into between First Horizon and the Plaintiffs were too vague to support the existence of a valid and enforceable contract.

As is clear, the essence of the Chancery Court's holding was that (a) there was no valid contract and (b) in the absence of a valid contract, there could be no claim for breach of the implied covenant.

As we perceive it, the Chancery Court was clearly under the impression that the Kinards' contract-based claims were exclusively predicated on the alleged agreement "to process a loan modification request . . . and to render a decision on the modification request." This view of the complaint was inaccurate. Although the Kinards did aver that First Horizon had agreed to process a loan modification request, a potential basis for contractual liability also stemmed from the underlying loan documents. For example, the Kinards asserted that First Horizon had breached the covenant of good faith and fair dealing "in carrying out the contractual loan servicing responsibilities associated with the loan transaction."

Because the Kinards' contract-based claims were not solely predicated on a separate alleged agreement to process a loan modification request, the Chancery Court's ruling was, as a threshold matter, overly broad in terms of its reasoning. The Kinards' claim for breach of the implied covenant of good faith and fair dealing was simply not dependent only on an agreement to process a loan modification. To this end, we agree with the Kinards that the Chancery Court "erred in disregarding the basic loan agreement between [them] and First Horizon as valid and enforceable contracts."

However, the fact that the Chancery Court had an imprecise understanding of the Kinards' claims does not necessarily mean that its dismissal of those claims should be reversed. This Court is permitted to affirm a grant of summary judgment on grounds different than those cited by the trial court. *Hill v. Lamberth*, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001) (citation omitted). For the reasons set forth below, we find no reason to disturb the Chancery Court's dismissal of the contract-based claims against First Horizon.

To the extent that the Kinards believe they have a valid claim against First Horizon based on an alleged oral agreement to process a loan modification request, the issue is waived. Although the trial court dismissed the merits of such a claim by holding that the terms of such an agreement were "too vague," the Kinards have devoted virtually no attention to this issue on appeal. Their principal appellate brief includes a conclusory assertion that "there was an enforceable agreement that First Horizon would process [their] loan modification to completion," but no argument is actually offered in support of this notion. The only substantive arguments in the Kinards' brief concerning their contract claims against First Horizon are those which relate to alleged breaches of the covenant of good faith and fair dealing and the original loan documents.[3] We therefore affirm the Chancery Court's decision to dismiss the Kinards' breach of contract claim to the extent it is predicated on an agreement separate from the original note and deed of trust. *See Bean v. Bean*, 40 S.W.3d 52, 56 (Tenn. Ct. App. 2000) (holding that an issue is waived "where it is simply raised without any argument regarding its merits").

We also affirm the Chancery Court's dismissal of the Kinards' claim against First Horizon for breach of the implied covenant of good faith and fair dealing. As previously noted, although the Chancery Court's specific rationale in dismissing that claim was erroneous, we are free to affirm the grant of summary judgment on a different basis. Here, the implied covenant claim against First Horizon fails as a matter of law.

In this case, the Kinards contend that First Horizon breached the implied covenant of good faith and fair dealing by failing to act reasonably in accordance with the original note and deed of trust. In general, they take issue with the manner in which First Horizon acted in connection with their loan modification application. For example, in addition to arguing that First Horizon acted in bad faith by transferring the loan while a modification application was pending, the Kinards argue that First Horizon failed to provide a response to their modification request within a reasonable time and forced them to repeatedly send applications.

Similar allegations were at issue in *Pugh v. Bank of America*, No. 13-2020, 2013 WL 3349649 (W.D. Tenn. July 2, 2013). In that case, the plaintiffs asserted that defendants had violated the covenant of good faith and fair dealing by: "(1) delaying, and never providing, notification to Plaintiffs about Defendants' approval or denial of various loan modifications; (2) routinely demanding documents Plaintiffs had already submitted; (3) failing to offer Plaintiffs a HAMP loan modification; (4) failing to offer Plaintiffs a 'superseding loss mitigation alternative' after they had been denied a HAMP loan modification; (5) instructing Plaintiffs to refrain from making mortgage payments

---

[3] We also observe that, as phrased in the "Statement of the Issues" section of their brief, the Kinards' focus on contractual recovery is related solely to the original note and deed of trust. In pertinent part, their raised issue asks "whether [First Horizon and Nationstar] breached their contractual obligations to service the Plaintiffs' loan under the Promissory Note and Deed of Trust and the covenants of good faith and fair dealing that attach thereto under Tennessee law."

throughout the loan modification process and then using the default as a basis for proceeding with foreclosure; (6) failing to have adequate internal procedures in place, or to supervise employees, to provide Plaintiffs with accurate and consistent information about their loan status; and (7) proceeding with foreclosure while Plaintiffs' loan modification request was pending." *Id.* at *10. In noting that the pleaded claim was legally infirm, the *Pugh* court held:

> Plaintiffs have not adequately pled a breach of the duty of good faith and fair dealing. The gravamen of Plaintiffs' claim is that Defendants did not offer loan modifications to which Plaintiffs were entitled and instructed Plaintiffs to stop making payments during the modification process. Plaintiffs allege that Defendants used nonpayment as an excuse to proceed to foreclosure. Those allegations fall short of establishing a breach of the duty of good faith and fair dealing. <u>Defendants were under no duty to offer a loan modification</u> or "to assist [Plaintiffs] in preventing foreclosure." *Knowles,* 2012 U.S. Dist. LEXIS, at *28 (citation omitted). <u>An alleged breach of the duty of good faith and fair dealing must be based on the contracting parties' reasonable expectations and the rights established by their agreement</u>. *Barnes & Robinson Co.,* 195 S.W.3d at 642. The Note and the Deed of Trust explicitly require timely monthly mortgage payments, absent which Defendants can proceed with foreclosure. Plaintiffs have failed to state a claim for breach of an implied covenant of good faith and fair dealing.

*Id.* at *12 (emphasis added).

Likewise, in this case, the Kinards' note called for monthly payments, and the deed of trust allowed for foreclosure following a default in payment obligations. Of principal relevance, the loan documents simply did not require First Horizon to entertain a loan modification request. Accordingly, we fail to see how First Horizon's alleged failure to process a loan modification application, and the alleged manner in which it carried out such failure, violated the implied covenant of good faith and fair dealing. *See Cadence Bank, N.A. v. The Alpha Trust*, 473 S.W.3d 756, 769 (Tenn. Ct. App. 2015) ("The duty of good faith . . . does not extend beyond the terms of the contract and the reasonable expectations of the parties under the contract.").

### Nationstar

Having addressed the contract-based claims asserted against First Horizon, we now turn to review the allegations brought forth against Nationstar. The Kinards maintain that Nationstar breached the loan contract/covenant of good faith and fair dealing by failing to accommodate their request for payoff figures. This claim is predicated on the allegation that they had found another source to refinance their loan.

The Kinards reason that because they "had a right to pay off the balance of their loan under the express terms of the Promissory Note," "[i]t follows that the covenant of good faith would require the servicer to facilitate the refinancing of the debt by providing correct and accurate figures."

Although the Chancery Court ultimately denied the Kinards any contract-based relief against Nationstar, it did not hold that the allegations against Nationstar were legally insufficient, nor did it hold that Nationstar had affirmatively negated an essential factual element of the Kinards' contract/implied covenant claims. Rather, the Chancery Court's holding was predicated exclusively on its conclusion that no breach of contract claim had been asserted against Nationstar. Detailing its reasoning in its final order, the Chancery Court noted as follows:

> Nationstar Mortgage is entitled to summary judgment as a matter of law on the Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing because there is no cause of action for breach of the implied covenant of good faith and fair dealing absent a valid claim for breach of contract and because no claim for breach of contract was asserted against Nationstar Mortgage by the Plaintiffs.

On appeal, the Kinards argue that the trial court's basis for dismissal was improper. They note that a claim for breach of contract was asserted against Nationstar and specifically point to the prayer in the complaint as evidence of this fact. We agree with the Kinards' position on this issue. Although the complaint could have been drafted with greater clarity and precision to the extent that Nationstar was not specifically listed under the "Count II: Breach of Contract" heading, the Kinards did specifically pray that the Chancery Court "enter judgment against Defendants First Horizon and Nationstar and in favor of Plaintiffs for damages for breach of contract." Moreover, notwithstanding the apparent absence of allegations against Nationstar under "Count II," we note that the first paragraph of that count began by stating that "[t]he allegations of all other paragraphs and claims in this pleading are incorporated as if fully rewritten herein." As a technical matter, therefore, we cannot conclude that allegations against Nationstar were not included; other sections of the complaint included factual allegations involving Nationstar, including allegations relating to Nationstar's alleged failure to respond to requests for payoff information. Although not a model of clarity, the complaint did seek to recover against Nationstar for breach of contract, and therefore, we conclude that the Chancery Court's stated rationale for dismissing the implied covenant claim against Nationstar was in error.

As noted previously, although we are free to affirm the dismissal of a claim on different grounds than relied upon by the trial court if it is appropriate, we cannot do so here. As a factual matter, Nationstar has not affirmatively negated the Kinards' assertion that it failed to respond to requests for payoff information. We cannot, therefore, affirm

summary judgment on the basis that the Kinards' claim against Nationstar is without a factual foundation. The Kinards' factual allegations may ultimately be rebutted with proof, but Nationstar did not attempt to meet its burden on this issue when it filed the motion for summary judgment presently under review.

We also cannot hold that the Kinards' allegations are legally insufficient. At oral argument, counsel for Nationstar argued that Nationstar could not be liable for failing to provide payoff information to the Kinards. As explained below, however, we are of the opinion that the failure to provide payoff information within a reasonable time upon request can give rise to a claim for breach of the implied covenant of good faith and fair dealing.

A duty of good faith and fair dealing is implied in the performance and enforcement of every contract. *Lamar Adver. Co. v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009) (citation omitted). The purpose of the implied covenant is two-fold. *Id.* First, it honors the reasonable expectations of the contracting parties. *Id.* (citation omitted). Second, it protects the rights of the parties to receive the benefits of the agreement into which they entered. *Id.* (citation omitted). As we alluded to in our discussion of the Kinards' contract-based claims against First Horizon, the implied duty of good faith and fair dealing cannot be used to create new contractual rights, nor can it be used to circumvent the specific terms of the parties' agreement. *Id.* (citation omitted). What is required by the duty of good faith depends upon the individual contract in each case. *Barnes & Robinson Co., Inc. v. OneSource Facility Servs., Inc.*, 195 S.W.3d 637, 643 (Tenn. Ct. App. 2006). "In construing contracts, courts look to the language of the instrument and to the intention of the parties, and impose a construction which is fair and reasonable." *TSC Indus., Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987) (citation omitted).

Although our research shows that some courts have concluded that the failure to provide payoff information gives rise to a violation of the implied covenant of good faith and fair dealing, others have not. *Compare In re 201 Forest Street LLC*, 409 B.R. 543, 593 (Bankr. D. Mass. 2009) ("[A] borrower in any lending relationship has a reasonable expectation that its lender will provide accurate written payoff figures upon reasonable request."), *and KNA Family LLC v. Fazio*, 371 Wis. 2d 564, 884 N.W.2d 534 (Wis. Ct. App. 2016) (unpublished table decision) (finding as persuasive a prior opinion that recognized that the timely failure to provide a payoff statement can be a breach of the covenant of good faith), *with Graves v. Logan*, 404 S.W.3d 582, 586 (Tex. App. 2010) (finding no precedential authority to support the existence of an implied covenant to provide a payoff amount in a transaction involving a promissory note and deed of trust). In our view, the legal viability of an implied covenant claim is entirely dependent on the nature of the agreement at issue. After all, as we have noted, the covenant of good faith works to protect the parties' reasonable expectations and "imposes a duty . . . to do nothing that will impair or destroy the rights of the other party to receive the benefits of

- 11 -

the contract." *Long v. McAllister-Long*, 221 S.W.3d 1, 9 (Tenn. Ct. App. 2006) (citations omitted).

In this case, the loan agreement at issue gave the Kinards the right to prepay their loan. In our opinion, when borrowers have a contractual right to pay off the principal balance of their loan in full before the scheduled maturity date, those borrowers have a reasonable expectation that they will be informed of the amounts owed on the loan should they request such information. We observe that one judge on the Texas Court of Appeals has applied similar reasoning when addressing this issue. *See Graves*, 404 S.W.3d at 587 (Sharp, J., concurring and dissenting) (emphasis in original) ("Whenever a contract recites that a party has a right to an early payoff, there is an implied **contractual** duty to provide a payoff statement because failure to do so (and do so in a timely fashion) nullifies (breaches) that provision of the contract.").

Based on the foregoing discussion and the record before us, we are simply unable to conclude that the Kinards' implied covenant claim against Nationstar was properly dismissed. As noted previously, Nationstar never presented evidence at summary judgment affirmatively negating the Kinards' assertion that it failed to respond to requests for payoff information. Having failed to satisfy its burden on this issue, summary judgment was not appropriate. We therefore reverse the Chancery Court's dismissal of the Kinards' claim against Nationstar for breach of the implied covenant of good faith and fair dealing.

## Misrepresentation Claims

"Count V" of the Kinards' complaint asserted claims against First Horizon for "Intentional or Negligent Misrepresentation." In order to prove a claim based on an intentional misrepresentation, a plaintiff must show that:

> 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (quoting *Metro. Gov't of Nashville & Davidson Cnty. v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992)). In order to prove a claim for negligent misrepresentation, a plaintiff must show that "the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or communicating the information and the plaintiffs justifiably relied on the information." *Id.* (quoting *Williams v. Berube & Assocs.*, 26 S.W.3d 640, 645 (Tenn. Ct. App. 2000)).

In this case, we are of the opinion that the allegations leveled against First Horizon are legally infirm to support the asserted misrepresentation claims. As best as we are able to understand from this appeal, the Kinards' grievance underpinning their misrepresentation claims is that First Horizon falsely communicated to them that their loan payments were suspended. However, having reviewed their complaint, we observe that the Kinards did not actually assert that First Horizon provided such information. The specific assertion from the complaint was that First Horizon representatives "intentionally or recklessly advised the Plaintiffs to cease making regular mortgage payments during the loan modification process." The allegation that First Horizon *advised* the Kinards to withhold payments simply does not implicate a representation of an existing or past fact so as to support a misrepresentation claim; as pled, there is no assertion that First Horizon made any representation or statement that the Kinards' payments were, in fact, suspended during the modification review period.[4] However, even if we treated the alleged *advice* not to make payments as equivalent to a factual representation that payments were suspended, we would still affirm dismissal of the misrepresentation claims. As noted above, a plaintiff must reasonably rely on a false representation in order to recover on a claim for misrepresentation. Here, we are of the opinion that there is a lack of a genuine issue concerning the Kinards' reliance on any supposed statement that payments were suspended. As First Horizon observed in connection with its motion for summary judgment, following the Kinards' request for a loan modification, it sent them a letter expressly informing them that their obligation to make payments was not suspended. We therefore affirm the Chancery Court's judgment as it relates to this issue.[5]

### *Promissory Estoppel*

In Tennessee, the doctrine of promissory estoppel is not liberally applied. *Barnes & Robinson Co., Inc.*, 195 S.W.3d at 645. Because promissory estoppel is an equitable doctrine, its limits are "defined by equity and reason." *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007) (citations omitted). In order to succeed on a claim for promissory estoppel, plaintiffs must establish the following elements: "(1) that a promise was made; (2) that the promise was unambiguous and not

---

[4] In support of their misrepresentation claims, the Kinards' appellate brief also asserts that the Kinards "were told that they would be instructed as to when and how much they should resume paying." The misrepresentation claims are also without merit to the extent that they are predicated on this allegation. The alleged promise that the Kinards "would be instructed" when to make certain payments relates to a future event, not a statement of a past or present fact. *See Jones v. BAC Home Loans Servicing, LP*, No. W2016-00717-COA-R3-CV, 2017 WL 2972218, at *11 (Tenn. Ct. App. July 12, 2017) (noting that statements of intention and representations of future events are not actionable).

[5] The Chancery Court's final order formally dismissed the misrepresentation claims on the basis that they were barred by the statute of limitations. We do not reach the merits of the statute of limitations argument but affirm dismissal for the reasons stated herein.

unenforceably vague; and (3) that they reasonably relied upon the promise to their detriment." *Id.* (citations omitted).

Here, the Kinards' promissory estoppel claim is predicated on their allegation that First Horizon promised them "fair consideration for a permanent loan modification if they made proper application and provided required information." According to their complaint, the Kinards relied on First Horizon's promise and withheld regular loan payments as instructed while the modification application was pending. In dismissing the validity of this claim at summary judgment, the Chancery Court held as follows:

> First Horizon is entitled to summary judgment as a matter of law on the Plaintiffs' promissory estoppel claim for two reasons. First, the Plaintiffs' promissory estoppel claim is barred by the applicable three-year statute of limitations. Second, First Horizon is entitled to summary judgment on the Plaintiffs' promissory estoppel claim because it was not reasonable for the Plaintiffs to refrain from making their monthly payments while their loan application was pending, especially after being advised in writing that their obligation to make monthly payments was not suspended while their application for a loan modification was pending.

Although the Kinards have claimed detrimental reliance as a result of their decision to not make monthly payments on the loan, we agree with the Chancery Court's conclusion that their actions were not reasonable. As previously noted in connection with our discussion of the misrepresentation claims, First Horizon sent the Kinards a letter specifically informing them that their obligation to make payments was not suspended. Being of the opinion that there is no genuine issue with respect to this matter, we accordingly affirm the dismissal of the promissory estoppel claim.[6]

### TILA Claim/Regulation Z

In their last issue on appeal, the Kinards argue that the trial court erred in dismissing their TILA claim against the Bank of New York Mellon as time-barred. The Kinards' claim is predicated on the allegation that the bank did not give the notice required under 12 C.F.R. § 226.39. That section, and its statutory parallel 15 U.S.C. § 1641(g)(1), generally provide that assignees of mortgage loans must notify consumers that their loan has been transferred within thirty days of the transfer. *See* 15 U.S.C. § 1641(g)(1) ("In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer[.]"); 12 C.F.R. § 226.39 (providing that a "covered

---

[6] We do not express an opinion on the Chancery Court's conclusion regarding the bar posed by the statute of limitations. That specific issue is pretermitted.

person" who "becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation" shall disclose that the loan was "sold, assigned or otherwise transferred" "on or before the 30th calendar day following the date of transfer").

Specifically at issue in this case is the Kinards' assertion that no notice was provided to them following a March 21, 2013 transfer of ownership. Based on the date of this alleged violation, the Bank of New York Mellon has maintained that the TILA claim against it was not timely asserted. In developing this point in its appellate brief, it argues as follows:

> Pursuant to the disclosure requirements of 12 C.F.R. § 226.39, the Bank of New York would have had 30 days from the March 21, 2013 Corporate Assignment (i.e., until April 20, 2013) in which to give Appellants notice of the transfer[.] . . . For purposes of the TILA statute of limitations, Appellants had "one year from the date of the occurrence of the violation," i.e., one year from April 20, 2013, in which to file their Complaint. Thus, the statute of limitations on Appellants' TILA claim commenced on April 21, 2013 and expired on April 21, 2014. However, Appellants did not file suit over the alleged TILA violation until August 21, 2014 – four months after the statute of limitations had expired.

We agree with the bank's argument. There is no dispute among the parties that the Kinards' TILA claim is subject to the one-year limitation period in 15 U.S.C. § 1640(e). That statute specifically provides that a claim must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). As noted by the bank, although the alleged violation here occurred by failing to give notice within 30 days of March 21, 2013, the TILA claim was clearly not asserted within one year from that alleged violation. The Kinards' complaint was not filed until August 21, 2014.

Although the Kinards suggest that an issue exists as to when they reasonably should have discovered the alleged TILA violation, their reliance on the discovery rule is misplaced. As just highlighted, 15 U.S.C. § 1640(e) provides that an action must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Based on the language of the statute, we conclude—as several courts have done—that the discovery rule does not apply. *See Strickland-Lucas v. Citibank, N.A.*, 256 F. Supp. 3d 616, 627 (D. Md. 2017) (noting that "TILA's statute of limitations is not expressly based on when a claim 'accrues'"); *Rowe v. Aurora Commercial Corp.*, No. 5:13-21369, 2014 WL 3810786, at *9 (S.D. W. Va. Aug. 1, 2014) (noting that the "language [in 15 U.S.C. § 1640(e)] is clear and does not contemplate application of the discovery rule"); *Polkampally v. Countrywide Home Loans Inc.*, No. 13-174 (RBK/JS), 2013 WL 5937000, at *6 (D.N.J. Nov. 6, 2013) ("Courts have rejected the idea that a discovery rule applies to a TILA violation that causes the claim to accrue whenever the

alleged violation is discovered.").  We accordingly affirm the trial court's grant of summary judgment on this issue.

**CONCLUSION**

Although we reverse the Chancery Court's dismissal of the Kinards' claim against Nationstar for breach of the implied covenant of good faith and fair dealing, its final order is otherwise affirmed.  The costs of this appeal are assessed one-half against the Appellants Dawn W. Kinard and William E. Kinard, and one-half against the Appellee Nationstar Mortgage, LLC, for all of which execution may issue if necessary.  This case is remanded for the collection of costs, enforcement of this Court's judgment, and for such further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE