IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 14, 2019 Session

## NATIONWIDE INVESTMENTS, LLC v. PINNACLE BANK

**Appeal from the Circuit Court for Davidson County**
No. 17C2661   Thomas W. Brothers, Judge
_____

### No. M2018-01180-COA-R3-CV
_____

In this case, the plaintiff-appellant, Nationwide Investments, LLC, brought suit against Pinnacle Bank for, among other things, an alleged violation of the state's Financial Records Privacy Act.  The case was dismissed at summary judgment, and sanctions were imposed against the plaintiff and its counsel.  Although the plaintiff and its counsel now appeal, raising several issues for our review, for the reasons stated herein, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Charles Walker, Nashville, Tennessee, for the appellant, Nationwide Investments, LLC.

Charles Walker, Nashville, Tennessee, Pro se.[1]

David M. Smythe, Nashville, Tennessee, for the appellee, Pinnacle Bank Financial Partners, Inc, d/b/a Pinnacle Bank.

_____

[1] Although this case was filed by Nationwide Investments, LLC against Pinnacle Bank, we note that the trial court ultimately sanctioned Mr. Walker, as well as Nationwide, in the course of the trial court proceedings.  On appeal, there is argument that the "Rule 11 Sanctions Were Not Appropriate," and we interpret this argument to be, in part, on behalf of Mr. Walker individually.  Indeed, we note that the cover page of the appellants' principal appellate brief lists Mr. Walker, who is a licensed attorney, as "Appellant" under his Tennessee Board of Professional Responsibility number.  The brief also concludes by praying that this Court "reverse the trial court's award of Rule 11 sanctions against counsel."  As a result, this Court properly considers Mr. Walker as an appellant in this matter.

**OPINION**

**BACKGROUND AND PROCEDURAL HISTORY**

This appeal arises out of a lawsuit between Nationwide Investments, LLC ("Nationwide") and Pinnacle Bank ("the Bank"). Nationwide's counsel in this appeal, Charles Walker, is also its sole member and owner. Prior to the onset of the present litigation, Mr. Walker was a debtor in a Chapter 11 bankruptcy case. The Bank was a secured creditor in the bankruptcy case, with multiple mortgage loans.

At the time of the bankruptcy case filing, on February 29, 2016, Mr. Walker owned approximately forty residential properties. It should be further noted that, immediately prior to the bankruptcy case filing, Family Trust Services, LLC ("First Family")[2] had obtained a prejudgment attachment order in the Davidson County Chancery Court against all rental real properties owned by Mr. Walker. In Mr. Walker's Chapter 11 bankruptcy petition, which had been filed in the United States Bankruptcy Court for the Western District of Tennessee, he requested that the attachment order be stayed. The bankruptcy matter was thereafter transferred to the United States Bankruptcy Court for the Middle District of Tennessee.

On March 23, 2016, attorney David Smythe filed a notice of appearance on behalf of the Bank in the bankruptcy case. Nearly two months later, on May 16, 2016, Steven Lefkovitz filed a notice of appearance on behalf of Mr. Walker in the bankruptcy matter.

Previously, in February 2015, the Bank had entered into a mortgage loan transaction with Nationwide with regard to a property at 1125 Sunnymeade Drive in Nashville. As is relevant here, the Bank received a lender's title policy as part of this transaction. On June 2, 2016, in connection with Mr. Walker's bankruptcy proceeding, Mr. Smythe received service of a subpoena duces tecum issued by attorney Paul Krog on behalf of his client, First Family, seeking production of the title policy for the 1125 Sunnymeade Drive property. Indeed, in pertinent part, the subpoena requested that the Bank produce, on June 20, 2016, the following:

> 1. Any policy of title insurance written for the benefit of the lender in connection with the transaction in the course of which the deed of trust presently found in the records of the Davidson County Register of Deeds as document number 20150225-0016193 and appended hereto was executed.

Notably, no other records were requested by the subpoena, and the subpoena specifically indicated that it had been served as specified in Tennessee Code Annotated section 45-10-106. The Bank eventually would respond to the subpoena and produce the title policy, with Mr. Smythe confirming in a letter to Mr. Krog on June 16, 2016 that no

---

[2] We employ this tag consistent with the designation appearing in the record.

motion to quash the subpoena had ever been timely filed.  The letter indicated that it was also being mailed to Mr. Lefkovitz, counsel for Mr. Walker.

On June 24, 2017, Mr. Walker filed an objection to the Bank's secured mortgage claims in the bankruptcy case, challenging the Bank's entitlement to attorney's fees. Thereafter, on July 28, 2017, Mr. Walker filed an amended objection in which he also accused Mr. Smythe of acts of unethical conduct.  After an objection hearing was held in the bankruptcy court in August 2017, the bankruptcy court entered two orders in early September 2017 awarding the Bank attorney's fees and costs in conjunction with its claims.  Mr. Walker soon filed notices of appeal concerning these orders, and on October 23, 2017, the present litigation commenced in the Davidson County Circuit Court ("the trial court").  On that date, Nationwide filed its complaint asserting that the Bank had, among other things, violated Tennessee's Financial Records Privacy Act.  In pertinent part, Nationwide asserted that the Bank had "disclosed Nationwide's financial records to a third party (known as a business competitor) without Nationwide's consent."

Following the filing of the complaint, on October 27, 2017, Mr. Smythe sent Mr. Walker a letter indicating that the Bank had complied with the Financial Records Privacy Act and requesting that Nationwide withdraw its complaint.  According to the letter, Nationwide's complaint failed to comply with Rule 11 of the Tennessee Rules of Civil Procedure and was not properly filed.  Mr. Smythe warned that he would seek sanctions against Mr. Walker, as well as Nationwide, if the complaint was not withdrawn.  A second letter, along with a copy of a planned Rule 11 motion for sanctions, was sent to Mr. Walker on November 8, 2017.  Therein, warning was given that the motion for sanctions would be filed on December 5, 2017 unless the complaint was dismissed or withdrawn prior to that date.

The Bank thereafter filed an answer to Nationwide's complaint, and on December 5, 2017, the Bank filed a motion for summary judgment and a motion for sanctions.  In a memorandum filed in support of the motion for summary judgment, the Bank argued, among other things, that no timely motion to quash the subpoena from Mr. Krog had ever been filed, that the produced title policy did not qualify as a "financial record," and that, even if the title policy was a "financial record," the Financial Records Privacy Act was followed when the Bank produced a copy of the policy pursuant to the subpoena.  In its motion for sanctions, which was brought against Nationwide and Mr. Walker, the Bank asserted that the complaint had been filed in bad faith and submitted that it should be able to tender an affidavit to the court detailing all attorney's fees and expenses incurred by the Bank in seeking dismissal of this "frivolous" lawsuit.

After Nationwide responded to the motion for sanctions, an agreed order was entered on April 16, 2018 setting hearings on the Bank's motion for summary judgment and motion for Rule 11 sanctions for May 11, 2018.  Nationwide thereafter responded to the filed motion for summary judgment on May 7, 2018, and on May 8, 2018, it filed a

motion for leave of court to file an amended complaint.  On May 25, 2018, the trial court entered a trio of orders denying Nationwide's motion for leave to amend, granting the Bank summary judgment on all claims, and granting Rule 11 sanctions against both Nationwide and Mr. Walker.  Because the order on the motion for sanctions did not specify the amount of attorney's fees assessed against Nationwide and Mr. Walker, a finalized sanctions order was thereafter entered on June 19, 2018.

A notice of appeal was filed on June 25, 2018, but Mr. Walker filed a motion to alter or amend the sanctions order on July 19, 2018.  A hearing on Mr. Walker's motion to alter or amend was not held until December 7, 2018, and on that date, Mr. Walker and Nationwide also filed a motion to disqualify the trial court judge pursuant to Rule 10B of the Rules of the Tennessee Supreme Court.  The motion to disqualify was promptly denied by written order on December 11, 2018.  Subsequently, on December 18, 2018, the trial court entered an order denying Mr. Walker's motion to alter or amend.

In addition to the notice of appeal that was filed, a petition for recusal appeal was filed in connection with the trial court's ruling on the motion to disqualify.  Pursuant to an order of consolidation entered by this Court on January 11, 2019, we are presently tasked with resolving raised issues concerning the underlying case, as well as the court's ruling on the motion to disqualify.

## ISSUES PRESENTED

The brief filed by Mr. Walker and Nationwide raises four primary issues for our review:

1. Whether the trial court erred by granting summary judgment.
2. Whether the trial court erred by denying Nationwide's motion for leave to file a first amended complaint.
3. Whether Rule 11 sanctions were appropriate.
4. Whether the trial judge should have recused himself.

For its part, the Bank requests damages for a frivolous appeal pursuant to Tennessee Code Annotated section 27-1-122.

## DISCUSSION

As indicated above, this appeal presents various issues for our review.  We turn first to the trial court's entry of summary judgment in favor of the Bank.  Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *Robinson v. Baptist Mem'l Hosp.*, 464 S.W.3d 599, 606 (Tenn. Ct. App. 2014).  "The resolution of a motion for summary judgment is a matter of law, which we review *de novo* with no presumption of

correctness." *Id.* at 607 (citing *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008)).

In addition to asserting a violation of the Financial Records Privacy Act, Nationwide's complaint charged that the Bank had breached a duty of loyalty to Nationwide and that the Bank had violated the federal Right to Financial Privacy Act. In this appeal, Nationwide does not appear to challenge the dismissal of its federal financial privacy claim, as the included argument in its brief relates only to the state Financial Records Privacy Act and its duty of loyalty claim. In tackling the overarching issue of whether summary judgment was proper as to these matters, we address a number of discrete concerns.

We begin by focusing on the question of whether this case is solely about the produced title policy or also involves other documents. In its complaint, Nationwide contended, without specification, that more than one document had been wrongfully produced by the Bank, stating that the Bank had disclosed its "financial records." This alleged production of multiple records became a heated point of contention at the summary judgment stage of litigation, with the Bank contending that only one document was subpoenaed and produced. As argued in its motion for sanctions filed contemporaneous to the submission of its summary judgment papers, the Bank stated that the "financial records" that had allegedly been provided by the Bank actually consisted of "one (1) document," the title policy, which it noted had been "provided by the Bank to a creditor in Mr. Walker's Bankruptcy Case -- pursuant to a properly issued and served Bankruptcy Subpoena duces tecum on the Bank in the Walker Bankruptcy Case -- which was never objected to and/or sought to be quashed by Nationwide." When the matter was addressed at the hearing for summary judgment, Nationwide, like it had in filings submitted with the trial court, pointed to certain statements from Mr. Smythe in bankruptcy court as putative support for the position that more than one document was produced. In relevant part, Mr. Walker, in representing Nationwide, argued as follows:

> I do agree with Mr. Smythe [that the title policy is] the only thing at issue that was released pursuant to the subpoena. That's correct. Uh, but, I've also alleged and I've attached, uh, in the, in my declaration, I believe, and also the transcript from the bankruptcy court which shows that Mr. Smythe told the bankruptcy court, uh, that he had disclosed the note, the deed of trust, and the title policy. That's in paragraph 6 of my response. And I've cited, I've attached his exhibit B to a transcript from the hearing in the bankruptcy court where he admitted that. So there were three documents that were disclosed. I agree that the title policy was the only one disclosed pursuant to the subpoena. The other two were just clearly given in violation of the law. Uh, so, so, it, it, you've got two things working here. Um, you've got the note and the deed of trust that were just turned over,

just, for lack of a better word, willy nilly, with no proof, and you've got title policy that was, uh, subpoenaed that was turned over.

The trial court ultimately rejected Nationwide's contention that this case involves more than the production of one document, and like the trial court, we are unpersuaded by the argument offered by Mr. Walker on behalf of Nationwide. Mr. Walker relies singularly on prior statements from Mr. Smythe in the bankruptcy court in an attempt to establish that more than one document was produced. Having reviewed the cited portion of the bankruptcy proceeding, we do not dispute that Mr. Smythe's prior statements in bankruptcy court reference the existence of other documents in connection with a discussion about a subpoena. Nevertheless, the cited statements do not indicate that these other documents were produced. The only evidentiary proof in Mr. Smythe's statements that *anything* was produced lies in his cited representation that the issued subpoena "was subsequently complied with." There is not any dispute in this case that only one subpoena is at issue, and Mr. Walker admitted at oral argument that the relevant subpoena is in the record transmitted to us on appeal. Although he expressed *a belief* that more than one document was requested in the subpoena, this is clearly not the case, as only the title policy was sought pursuant to it. To the extent that Nationwide is alleging that more documents were produced in this case, it has not marshaled any evidence supporting this position. Again, the cited statements from Mr. Smythe only provide evidence that there was production of something through compliance with a subpoena, and as noted, Mr. Walker specifically admitted at the summary judgment hearing that the title policy was the only thing produced pursuant to the subpoena.[3] As the trial court would later explain in ruling on the Bank's motion for sanctions, "there is no affirmative evidence of any other documents or information being disclosed."

In light of these facts, we conclude that the trial court did not err in deeming that the focus of this case should be restricted to the Bank's production of the title policy; indeed, there is no genuine issue that any other document was produced. As for the specific production of the title policy, there is a sharp difference of opinion between the parties on appeal as to whether that production was wrongful in light of the Financial Records Privacy Act. The trial court concluded that it was not and granted summary judgment by holding that the title policy does not constitute a "financial record" for purposes of the Financial Records Privacy Act. Whereas Nationwide's brief advocates for this Court to conclude that the title policy does constitute a "financial record," we need not directly address this proposition. Even assuming that the policy constitutes a "financial record," that does not signal that the trial court was wrong in dismissing Nationwide's claim under the Financial Records Privacy Act. Here, the undisputed facts

---

[3] Interestingly, though, as we have noted, Mr. Walker even expressed before this Court that he believes the subpoena requested more than one document although he also acknowledged upon questioning by the panel that he had not reviewed the subpoena at issue in this appeal in preparation for oral argument.

show that the subpoena represented on its face that it had been served as specified in Tennessee Code Annotated section 45-10-106, and no motion to quash was ever filed in the bankruptcy court within ten days of service. *See generally* Tenn. Code Ann. § 45-10-106. Whereas Nationwide denied, albeit without any proper supporting authority, that it was ever served with the subpoena,[4] we note again that the subpoena issued to the Bank specifically indicated that it had been served as required. Under the statute, the Bank is allowed to rely on such a representation when producing records, even if it is a false one, unless production somehow violates a court order. *See* Tenn. Code Ann. § 45-10-107(c) ("A financial institution shall not be deemed to violate this chapter because it produces financial records in response to a subpoena containing the representation required under subdivision (a)(1), even if the representation is false and a claim to that effect is made to the financial institution, unless the production violates a court order duly served on the financial institution."). We therefore find no error in the trial court's dismissal of Nationwide's claim under the Financial Records Privacy Act, albeit for a different rationale. *See Kinard v. Nationstar Mortgage LLC*, 572 S.W.3d 197, 205 (Tenn. Ct. App. 2018) ("This Court is permitted to affirm a grant of summary judgment on grounds different than those cited by the trial court.").

We also find no error in the trial court's dismissal of the duty of loyalty claim advanced by Nationwide. The trial court dismissed this claim "as a matter of law" and cited to the general rule that a debtor-creditor relationship between a customer and a lender does not create a special fiduciary duty between the parties. *See First Tenn. Bank Nat'l Ass'n v. C.T. Resorts Co., Inc.*, No. 03A019503-CH-00102, 1995 WL 511884, at *5 (Tenn. Ct. App. Aug. 30, 1995) (noting that Tennessee law "generally does not impose fiduciary or other special duties on banks with respect to their customers"). Here, the bare claim advanced by Nationwide alleged that there was a duty of loyalty in its favor solely by dint of its status as a "customer or borrower." Indeed, in pertinent part, the breach of duty of loyalty count from the complaint reads and alleges as follows:

---

[4] In response to one paragraph in the Bank's statement of undisputed facts, Nationwide makes a number of statements, including the following: "Deny that Nationwide was ever served with a copy of such subpoena or its attorney of record." No evidentiary support is immediately cited, although at the end of Nationwide's response, following all of its statements, Nationwide directs as follows: "See Declaration of Charles E. Walker paragraph 13." The referenced paragraph simply reads that "Steve Lefkovitz has never represented Nationwide Investments, LLC nor has he ever filed a notice of appearance for Nationwide Investments, LLC in any matter." Of course, this particular assertion does not itself support the statement that Nationwide was never served with the subpoena.

- 7 -

**BREACH OF DEPOSITOR/BORROWER LOYALTY:**

9.  Nationwide was a customer and borrower of Pinnacle at all times alleged herein.

10. Pinnacle owed a duty of loyalty to Nationwide as a customer or borrower.

11. Pinnacle breached that duty of loyalty when it contacted Nationwide's competitor and disclosed Nationwide's financing records and other information.

Inasmuch as the complaint alleges simply that Nationwide was a customer/borrower of the Bank, we find the pleaded allegations legally insufficient to establish that any duty of loyalty existed and therefore find no error in the trial court's dismissal of this claim.

Nationwide also challenges the trial court's denial of its motion for leave to amend its complaint. The rule governing amendment of pleadings is Rule 15.01 of the Tennessee Rules of Civil Procedure. In relevant part, that rule reads as follows:

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been set for trial, the party may so amend it at any time within 15 days after it is served. *Otherwise a party may amend the party's pleadings only by written consent of the adverse party or by leave of court*; and leave shall be freely given when justice so requires.

Tenn. R. Civ. P. 15.01 (emphasis added).

When deciding whether to allow a party to amend a pleading, trial courts have broad authority. *Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 741 (Tenn. 2013). A court's decision on a motion to amend will not be reversed absent an abuse of discretion, and pursuant to that standard, this Court is not permitted to substitute its judgment for that of the trial court. *Id.* Importantly, "[d]espite the liberality implicit in Tenn. R. Civ. P. 15.01, the courts have identified a number of circumstances that, singly or in combination, could warrant denying a motion to amend a pleading." *Hardcastle v. Harris*, 170 S.W.3d 67, 81 (Tenn. Ct. App. 2004). As we have noted, "[t]hese circumstances include: (1) undue delay in seeking the amendment, (2) lack of notice to the opposing party, (3) bad faith or dilatory motive of the moving party, (4) repeated failure by the moving party to cure deficiencies in earlier amendments, (5) futility of the proposed amendment, and (6) undue prejudice to the opposing party." *Id.*

In offering an explanation as to why it was denying Nationwide's motion for leave to amend, the trial court stated as follows in its written order:

[T]he Motion to Amend, which was filed only three (3) days before the Hearing of Defendant's Motion for Summary Judgment, was filed for an improper purpose to delay the hearing of the Defendant's Motion for Summary Judgment and the Motion to Amend is therefore untimely and is denied. The Motion to Amend alleges new facts and new information for the first time which Plaintiff was clearly aware of prior to the filing of the Motion to Amend. Plaintiff had been aware of Defendant's Motion for Summary Judgment since its filing on December 5, 2017 and Plaintiff had engaged in Discovery regarding the issues raised in the Motion for Summary Judgment, yet Plaintiff waited over 154 days before filing the Motion to Amend. The Court also notes that both parties had entered into an Agreed Order filed on April 11, 2018, resetting Defendant's Motion for Summary Judgment for hearing on today's date, yet Plaintiff waited to file the Motion to Amend until May 8, 2018, the day after it filed its Responses opposing Defendant's Motion for Summary Judgment. Again, the timing of the filing of this Motion to Amend is inappropriate and improper. Because the Motion to Amend was not timely filed and was filed for the improper purpose of delay, the Motion to Amend is denied.

Because we find this explanation adequate and conclude that the trial court did not abuse its discretion in its ruling on the motion for leave to amend, we hereby affirm its adjudication of that issue.

Next, we turn to the question of the sanctions that were imposed against Nationwide and Mr. Walker. Our review of this issue requires consideration of Rule 11 of the Tennessee Rules of Civil Procedure, specifically Rules 11.02 and 11.03. Rule 11.02, which pertains to representations made to the court, provides as follows:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,−

**(1)** it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
**(2)** the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

**(3)** the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

**(4)** the denial of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Tenn. R. Civ. P. 11.02.  As Rule 11.03 indicates, "[i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision 11.02 has been violated, the court may, subject to [certain conditions], impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision 11.02 or are responsible for the violation."  Tenn. R. Civ. P. 11.03.  On appeal, we review a trial court's ruling on a Rule 11 motion for an abuse of discretion.  *Marra v. Bank of New York*, 310 S.W.3d 329, 340 (Tenn. Ct. App. 2009).

In this case, the trial court awarded the Bank attorney's fees and expenses as sanctions against Nationwide and Mr. Walker.  In support of this decision, the trial court found, "[r]egrettably," that the lawsuit "was not filed for any proper purpose, but instead to harass Defendant."  The court noted that, whereas "Mr. Walker knew about the Subpoena in his Bankruptcy case . . . he did not object to it."  The trial court further noted that, although Nationwide had claimed documents other than the title policy were produced, there was "no affirmative evidence of any other documents or information being disclosed by Defendant."  Moreover, as for the legal sufficiency of the lawsuit, the trial court held that "a cursory review of the legal claims asserted in this case reveal[s] they are equally without merit."  In connection with its determination that the lawsuit had been filed to harass the Bank, the trial court observed that the lawsuit had only been filed after the Bank was awarded substantial attorney's fees against Mr. Walker in his individual bankruptcy action.

Having reviewed the trial court's order, including the above findings and observations, we find no abuse of discretion on the part of the trial court in its decision to award sanctions.  Moreover, in affirming the trial court's action, we feel compelled to comment on a few specific sub-issues.  Although Mr. Walker states that he was reasonable to rely on Mr. Smythe's statements in bankruptcy court as support for Nationwide's generalized allegation that financial records were produced, we have already noted that Mr. Smythe's comments only revealed that there was production pursuant to a subpoena.  Of course, in the trial court, Mr. Walker readily conceded that the title policy was the only document that had been produced pursuant to the subpoena at issue.[5]  Any claimed evidentiary foundation as to the production of other documents

---

[5] Inexplicably, despite his statement in the trial court, Mr. Walker stated in oral argument before this Court that there is a dispute as to whether more than one document was produced as a result of the subpoena.  While he has expressed his belief to this Court that more than one document was requested in

was clearly absent. Further, as we noted, the trial court took issue with the legal sufficiency of claims asserted by Nationwide. With specific respect to Nationwide's asserted claim under the federal Right to Financial Privacy Act, we note that Nationwide was warned that its claim was legally infirm and had no basis. Indeed, in its letter correspondence to Nationwide and in its motion for sanctions, the Bank emphasized that the federal statute invoked by Nationwide was inapplicable, stating that "this Code only applies for records sought by a department or agency of the Federal government. This Federal Statute does not apply if the records are sought by a private individual or entity." This assessment, in which the trial court found favor when it dismissed the federal claim, is correct. *See* 12 U.S.C. § 3402 ("Except as provided by section 3403(c) or (d), 3413, or 3414 of this title, no Government authority may have access to or obtain copies of, or the information contained in the financial records of any customer from a financial institution unless . . . ."); *see also United States v. Zimmerman*, 957 F. Supp. 94, 96 (N.D.W.Va. 1997) ("Under the Right to Financial Privacy Act, financial institutions are prohibited from providing access to the financial records of any customer of the financial institution to a government authority."); Lawrence A. Young, *The Landscape of Privacy*, 55 Consumer Fin. L.Q. Rep. 4, 13 (2001) (noting that the Right to Financial Privacy Act focuses "on the disclosure of information to government agencies and not to private entities").

Having addressed the foregoing matters, we turn to Nationwide's last raised issue, which concerns the trial judge's decision not to recuse himself. "The right to a fair trial before an impartial tribunal is a fundamental constitutional right." *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)). Preserving the public's confidence in judicial neutrality, however, requires more than ensuring a judge is impartial in fact. *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). It is also important that a judge be perceived to be impartial. *Id.* Even when a judge sincerely believes that he or she can preside over a matter in a fair and impartial manner, recusal is nonetheless required where a reasonable person "in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564-65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)).

Here, we find no reason to disturb the trial court's denial of the filed motion to disqualify. In addition to responding to the substance of the motion to disqualify, the trial court took issue with the motion's procedural shortcomings, stating in relevant part as follows:

> The Court finds Plaintiff's Motion is procedurally deficient. Pursuant to Rule 10B of the Supreme Court of Tennessee, a motion to

the subpoena, this is clearly not the case.

recuse must be accompanied by an affidavit or declaration under penalty of perjury, along with a statement that the motion is not being presented for any improper purpose. No affidavit or declaration is attached to Plaintiff's Motion. There is no statement that the Motion is not being presented for any improper purpose. The Motion is therefore procedurally deficient and is respectfully denied.

We agree with the trial court's assessment. The motion was deficient in the manner described, specifically contravening Section 1.01 of Tennessee Supreme Court Rule 10B. *See* Tenn. Sup. Ct. R. 10B, § 1.01 (noting that the motion to disqualify "shall be supported by an affidavit under oath or a declaration under penalty of perjury" and "shall affirmatively state that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation"). Therefore, we affirm the trial court's denial of the motion.

In closing, we review the Bank's request for damages under Tennessee Code Annotated section 27-1-122. Under this statute:

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. This Court has discretion in awarding damages under this provision. *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009).

Having reviewed the record, and in light of the foregoing discussion, we conclude that the present appeal was frivolous. The positions advanced by Nationwide and Mr. Walker are not only unsupported, but we hasten to add that Mr. Walker has made comments to this Court that directly contradict prior admissions on points Nationwide conceded in the trial court. For example, as we have noted, Nationwide conceded in the trial court that only one document had been produced pursuant to the subpoena, with Mr. Walker stating, "I do agree with Mr. Smythe [that the title policy is] the only thing at issue that was released pursuant to the subpoena. That's correct." Yet, when appearing before this Court, Mr. Walker attempted to argue that there was an issue about what was produced pursuant to the subpoena, evidently basing this on his belief that the subpoena had requested more than one document. Of course, Mr. Walker's mere belief is belied by the relevant subpoena, the content of which is undisputable and is in the record. The oral argument on this particular point was itself frivolous.

Accordingly, we find this case to be an appropriate one to award attorney's fees against Nationwide and Mr. Walker pursuant to Tennessee Code Annotated section 27-1-122. We hereby remand the matter to the trial court to determine the Bank's reasonable attorney's fees incurred in this appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed, and we hereby remand the case for all such further proceedings that are necessary and consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE