IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 20, 2018 Session[1]

## DELORES CONLEY v. TENNESSEE FARMERS INSURANCE COMPANY

**Appeal from the Circuit Court for Shelby County**
**No. CT-003609-15  Robert Samual Weiss, Judge**

_____

### No. W2017-00803-COA-R3-CV
_____

This appeal involves a dispute between an insurance company and one of its insureds. Following a fire to her home, the insured brought suit requesting that the insurance company be required to pay a claim for personal property damage. The insurance company defended on the ground that the insurance policy was void because a misrepresentation by the insured on her application for insurance increased the "risk of loss." *See* Tenn. Code Ann. § 56-7-103. The trial court agreed with the insurance company and granted summary judgment in its favor. For the reasons stated herein, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Al H. Thomas and Aaron L. Thomas, Memphis, Tennessee, for the appellant, Delores Conley.

Andrew H. Owens, Memphis, Tennessee, for the appellee, Tennessee Farmers Insurance Company.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

On May 21, 2013, a fire occurred at the Memphis residence of Appellant Delores Conley ("Ms. Conley"), resulting in damage to both the home and personal property on the premises. At the time of the fire, Ms. Conley was shown as an insured under a

---

[1] Oral argument in this case was conducted at Union University, Jackson, Tennessee.

property insurance policy issued by Tennessee Farmers Insurance Company ("Tennessee Farmers"). She filed a claim requesting that her real and personal property damage be covered under the policy, but total relief from Tennessee Farmers was not forthcoming. Although Tennessee Farmers paid for damages to Ms. Conley's home, the personal property claim eventually became a point of contention.

Eventually, in a letter sent to Ms. Conley in April 2015, Tennessee Farmers denied Ms. Conley's claim, citing a material misrepresentation made in her 2010 application for insurance. The letter stated that the misrepresentation increased the risk of loss as contemplated under Tennessee Code Annotated section 56-7-103 and therefore rendered her policy void. Specifically at issue was Ms. Conley's response to the question of whether she "Ever had any property in foreclosure?" Although Ms. Conley's answer to this question on her insurance application was "No," the facts reveal otherwise.

Previously, on September 27, 2005, Ms. Conley had taken title to property in Mississippi under a warranty deed naming her and her then-husband as grantees. A few years later, following a separation from her husband, a foreclosure occurred in relation to the Mississippi property. Specifically, on November 4, 2008, a substitute trustee executed a deed transferring the property to US Bank National Association as Trustee HEAT 2006-1. In 2010, following a divorce from her husband, Ms. Conley purchased the Memphis residence covered under the insurance policy at issue herein.

The present litigation ensued in August 2015, when Ms. Conley filed a complaint in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis. The complaint averred that, while Tennessee Farmers had paid for damage to Ms. Conley's house, it had not paid for all personal property damage sustained as a result of the May 2013 fire. According to the complaint, Tennessee Farmers was obligated to honor Ms. Conley's policy and was liable to pay for her insurance claim. On August 29, 2016, Ms. Conley filed an amended complaint. In addition to seeking recovery for her insurance claim,[2] Ms. Conley asserted claims for "extortion" and "racial discrimination." Regarding the latter matter, Ms. Conley alleged that Tennessee Farmers had committed "an act of racial discrimination in violation of the United States and Tennessee constitutions."

In defending the lawsuit brought against it, Tennessee Farmers argued that Ms. Conley's insurance policy was void. Detailing its position in its answer to Ms. Conley's amended complaint, Tennessee Farmers stated as follows:

---

[2] Ms. Conley prayed that, in addition to requiring Tennessee Farmers to honor her policy, the court should find Tennessee Farmers liable pursuant to Tennessee Code Annotated section 56-7-105. That statute provides for a 25% penalty where a refusal to pay a claim is not made in good faith. *Leverette v. Tenn. Farmers Mut. Ins. Co.*, No. M2011-00264-COA-R3-CV, 2013 WL 817230, at *17 (Tenn. Ct. App. Mar. 4, 2013) (citations omitted).

For affirmative defense, defendant asserts that the plaintiff made misrepresentation on her application for insurance. The misrepresentation is as follows:

> 10. *"Ever had any property in foreclosure?"* Your answer was *"No."*

In actuality, the plaintiff owned property located at 4121 Three Hawks Drive, Olive Branch Mississippi foreclosed on at the end of 2008 with the property being transferred from the plaintiff by substitute trust deed recorded on November 5, 2008.

. . . .

This misrepresentation on the application increased the risk of loss as contemplated in TCA 56-7-103 and Tennessee case law construing same and therefor[e] the insurance policy is void.

With the above argument at the forefront of its defense, Tennessee Farmers filed a motion for summary judgment on December 6, 2016. An order granting its motion was entered on March 22, 2017. Therein, the trial court held that Ms. Conley's misrepresentation on her insurance application "increased the risk of loss." Whereas Ms. Conley's asserted racial discrimination claim was dismissed in connection with the entry of the March 22 order, her extortion claim was formally dismissed pursuant to a later entered order.[3] This appeal follows the dismissal of Ms. Conley's claims for relief.

## ISSUES PRESENTED

Ms. Conley raises several issues for our review on appeal. Condensed and restated, these issues are as follows:

(1) Whether the Circuit Court erred when it ruled that the 2008 foreclosure on the Mississippi property (that Plaintiff did not disclose on her 2010 insurance application) increased Defendant's risk of loss in writing the insurance policy within the meaning of Tennessee Code Annotated section 56-7-103.

(2) Whether the Circuit Court erred when it ruled that Plaintiff's "No" answer to the question "Ever had any property in foreclosure?" on the 2010 insurance application was factually incorrect.

---

[3] In dismissing the asserted extortion claim, the trial court noted that "Tennessee has yet to recognize a civil claim of extortion."

(3) Whether the Circuit Court erred when it ruled that Defendant's contract of insurance with Plaintiff gave Defendant the right to void the policy for an innocent misrepresentation.

(4) Whether the Circuit Court erred when it ruled that an attorney's memo advising Defendant about the permissibility of voiding Plaintiff's policy was protected from discovery by the attorney-client privilege.

(5) Whether the Circuit Court erred by dismissing Plaintiff's racial discrimination claim.

(6) Whether the Circuit Court erred by dismissing Plaintiff's extortion claim.

(7) Whether the Circuit Court erred when it ruled that, although Plaintiff's policy was voided for an impermissible reason, Defendant can shield itself from liability by subsequently citing a different and permissible reason to void the policy.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Robinson v. Baptist Mem'l Hosp.*, 464 S.W.3d 599, 606 (Tenn. Ct. App. 2014) (citations omitted). "The resolution of a motion for summary judgment is a matter of law, which we review *de novo* with no presumption of correctness." *Id.* at 607 (citing *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008)).

## DISCUSSION

### Tennessee Farmers' Right to Void the Policy

Because the first three issues presented for our review all concern the right of Tennessee Farmers to void Ms. Conley's policy, we deal with them together here. We begin by addressing Ms. Conley's alleged lack of knowledge pertaining to the Mississippi property that was the subject of foreclosure in 2008. According to Ms. Conley, at the time of her application for insurance in 2010, she did not know that she had previously owned an interest in the Mississippi property or that the property had gone into foreclosure. Even assuming this is true, we must reject Ms. Conley's suggestion that Tennessee Farmers could not, as a matter of contract, void the policy for an "innocent" misrepresentation. In relevant part, the insurance policy at issue specifically provided that the policy would be "automatically void" if an insured "misrepresents any material fact or circumstance" relating to the policy. The policy also provided that the policy

would be void if an insured made a false statement relating to the policy or a loss.[4] As observed by Tennessee Farmers in its appellate brief, the insurance policy did not state that the underlying misrepresentation must be intentional, as opposed to innocent. Inasmuch as no such distinction was made, we disagree with Ms. Conley that an innocent misrepresentation could not serve as a predicate act for voiding the policy. Although often accompanied by an intent to deceive, a misrepresentation simply involves the "act of making a false or misleading assertion about something." Black's Law Dictionary 1022 (8th ed. 2004).

Nor is there any absolute legal barrier preventing an insurer from voiding a policy based on an "innocent" misrepresentation. Notwithstanding Ms. Conley's argument that there was no contractual right to void her policy in the case at bar, she concedes that an innocent misrepresentation could serve as the basis to void a policy pursuant to Tennessee Code Annotated section 56-7-103. The text of that statute, which is pivotal to the resolution of this appeal, reads as follows:

> No written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless the misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

Tenn. Code Ann. § 56-7-103.

As we have noted previously, the language of the statute is clearly disjunctive. *State Farm Gen. Ins. Co. v. Wood*, 1 S.W.3d 658, 661 (Tenn. Ct. App. 1999). "[T]he insurer may show either 1) that the misrepresentation was made with the intent to deceive, *or* 2) that the matter represented increased the risk of loss." *Id.* (citations omitted). In this appeal, we are only concerned with the second part of the statute; at oral argument, counsel for Tennessee Farmers conceded that his client's motion for summary judgment was not predicated on the existence of an intentional misrepresentation. Our inquiry is therefore limited to whether Ms. Conley misrepresented a matter on her application for insurance, and if so, whether the matter represented increased the risk of loss for Tennessee Farmers.

Although Ms. Conley contests the matter on appeal, the record reveals no genuine issue as to whether her insurance application misrepresented the fact that she previously had a property in foreclosure. As noted earlier, the undisputed facts reveal that (a) she

---

[4] We would further note that the application for insurance signed by Ms. Conley recited as follows: "I . . . understand that *any* misrepresentations or failure to complete all questions truthfully and fully will void this insurance." (emphasis added).

had owned Mississippi property with her former husband and (b) that the Mississippi property was transferred to US Bank National Association in 2008 as the result of a foreclosure. Even Ms. Conley seems to relent to the impact that these facts have on the truth/falsity of her insurance application answer. Indeed, notwithstanding multiple arguments as to why the answer on her insurance application was not factually incorrect, we observe the following passage from her brief's "Statement of the Case": "In this case, the alleged misrepresentation was Ms. Conley's 'no' answer in 2010 to the insurance application's question 'Ever had any property in foreclosure?'. *There is a technical problem with her answer* because a house was foreclosed on in 2008 that Ms. Conley did own a partial interest in[.]" (emphasis added) This was more than a "technical problem." The answer was factually incorrect. The contention that her insurance application did not contain a false assertion is simply without merit, and we reject her various arguments to the contrary.

Returning to the statute mentioned above, however, it should be evident that insurers are not given carte blanche to void a policy upon the establishment of a misrepresentation. Assuming it is not accompanied by an actual intent to deceive, the matter represented must increase the risk of loss. *See* Tenn. Code Ann. § 56-7-103. In this appeal, this "risk of loss" question is the primary issue before us. Did the matter represented on Ms. Conley's insurance application increase the risk of loss for Tennessee Farmers?

Whether a misrepresentation increases the risk of loss within the meaning of the statute is a question of law. *Sine v. Tenn. Farmers Mut. Ins. Co.*, 861 S.W.2d 838, 839 (Tenn. Ct. App. 1993) (citation omitted). Accordingly, a trial court's determination on the risk of loss issue is not entitled to a presumption of correctness on appeal. *Smith v. Tenn. Farmers Life Reassurance Co.*, 210 S.W.3d 584, 589 (Tenn. Ct. App. 2006). It is well-settled law that a misrepresentation is deemed to increase the risk of loss "when it is of such importance that it 'naturally and reasonably influences the judgment of the insuror in making the contract.'" *Sine*, 861 S.W.2d at 839 (quoting *Seaton v. Nat'l Grange Mut. Ins. Co.*, 732 S.W.2d 288, 288-89 (Tenn. Ct. App. 1987)). In explaining the relevant considerations surrounding this inquiry, we have previously noted as follows:

> Tenn. Code Ann. § 56-7-103 authorizes an insurance company to deny a claim if the insured obtains the policy after misrepresenting a matter that increased the company's risk of loss. A misrepresentation in an application for insurance increases the insurance company's risk of loss if it naturally and reasonably influences the judgment of the insurer in making the contract. It need not involve a hazard that actually produced the loss in question.
>
> The courts may use the questions an insurance company asks on its application to determine the types of conditions or circumstances that the

insurance company considers relevant to its risk of loss. Additionally, the courts frequently rely on the testimony of insurance company representatives to establish how truthful answers by the proposed insured would have affected the amount of the premium or the company's decision to issue the policy. A finding that the insurer would not have issued the policy had the truth been disclosed is unnecessary; *a showing that the insurer was denied information that it, in good faith, sought and deemed necessary to an honest appraisal of insurability is sufficient to establish the grounds for an increased risk of loss.*

*Smith*, 210 S.W.3d at 590 (emphasis added) (internal citations omitted).

A helpful illustration of these principles is found in this Court's decision in *Tennessee Farmers Mutual Insurance Co. v. Farrar*, 337 S.W.3d 829 (Tenn. Ct. App. 2009). In *Farrar*, the insured's house was damaged by a fire. *Id.* at 832. Although a claim was filed with the insurer, coverage was denied based upon a misrepresentation on the insured's insurance application. *Id.* at 831-32. The application for homeowners' insurance had specifically asked the insured whether any other party had an ownership interest in the property, and the insured had answered this question in the negative. *Id.* at 832. However, as it turns out, another individual, one Gary Vollheim, had a life estate in the property at the time the insurance application was signed. *Id.* In concluding that this misrepresentation increased the insurer's risk of loss under Tennessee Code Annotated section 56-7-103, this Court noted as follows:

The [insurance company's] witnesses clearly demonstrated that had Gary Vollheim's life estate been known, he would have been required to complete a form entitled "Additional Named Insured Application for Insurance" and the form would have been submitted to the [insurance company's] home office for evaluation. Mr. Vollheim is dead and we cannot speculate as to what additional information the Company might have obtained had he filled out the form. The point, however, is not what he might have answered; the point is that because the life estate was not disclosed, the [insurance company] never had an *opportunity* to ask him questions so it might evaluate the risk associated with the dual ownership interests of the Claimant and Mr. Vollheim.

*Id.* at 836.

What remains important is whether the insurer was denied information that it sought in good faith and deemed necessary to an honest appraisal of insurability. *Smith*, 210 S.W.3d at 590. Again, if it was denied such information, an increased risk of loss within the meaning of Tennessee Code Annotated section 56-7-103 has been established. *Id.* (citations omitted).

Here, evidence submitted at summary judgment indicated that Tennessee Farmers asks about past foreclosures in order to seek information about an applicant's financial stability. Ms. Conley did not dispute that this is the purpose of Tennessee Farmers' question concerning prior foreclosures, nor did she dispute that the question is asked with the expectation for a truthful answer in order that more questions can be asked if needed. Moreover, Ms. Conley did not disagree with Tennessee Farmers' contention that the information concerning prior foreclosures is sought in good faith.

Like Ms. Conley, we also agree that Tennessee Farmers seeks the information about prior foreclosures in good faith. Gauging an applicant's history of past foreclosures can assist the insurer in determining if it should inquire further as to whether that party will be financially capable of making premium payments or maintaining the property. It thus seems apparent to us that not accurately answering Tennessee Farmers' question concerning prior foreclosures increased the risk of loss because Tennessee Farmers was "denied information that it, in good faith, sought and deemed necessary to an honest appraisal of insurability." *Id.* (citations omitted). Indeed, we are of the opinion that the knowledge that Ms. Conley previously had property in foreclosure would "naturally and reasonably" affect the judgment of Tennessee Farmers. *See Sine*, 861 S.W.2d at 839 (quoting *Seaton*, 732 S.W.2d at 288-89) ("A misrepresentation increases the risk of loss when it is of such importance that it 'naturally and reasonably influences the judgment of the insuror in making the contract.'"). As we have noted, there is no dispute that the question regarding prior foreclosures is asked with the expectation for a truthful answer and that further questions can be asked if needed. Had Tennessee Farmers been informed of the prior foreclosure, it would have been able to ask questions to explore and assess the risks associated therewith.

According to Ms. Conley, there was no increased risk of loss to Tennessee Farmers because she was not on the loan associated with the Mississippi property that went into foreclosure. By referencing this fact and by citing to *Johnson v. State Farm Life Insurance Co.*, 633 S.W.2d 484 (Tenn. Ct. App. 1981), Ms. Conley argues that an insurer's good faith practice to seek information will create a rebuttable presumption that nondisclosure of that information increased the risk of loss. According to Ms. Conley, she rebutted that presumption by presenting proof of her status as a non-borrower on the Mississippi property. In her view, "her undisclosed foreclosure did not – and could not – increase Defendant's risk in any manner."

As Tennessee Farmers has observed in its appellate brief, *Johnson* does not contain any discussion of the rebuttable presumption test envisioned by Ms. Conley. Moreover, the cases interpreting Tennessee Code Annotated section 56-7-103 clearly indicate that a risk of loss is sufficiently established when the insurer is denied information that it in good faith wanted to obtain for an honest appraisal. *See id.* at 488 ("It is only necessary to determine that the misrepresentation was sufficient to deny the insurer information which they, in good faith, sought to discover, and which they must

have deemed necessary to an honest appraisal of insurability."). Here, Ms. Conley did not question that Tennessee Farmers sought information about prior foreclosures in good faith, and although she may have not been responsible for the loan associated with the Mississippi property, the fact remains that Tennessee Farmers was never given the opportunity to ask questions to evaluate the risks associated with a disclosed foreclosure. *See Farrar*, 337 S.W.3d at 836 ("The point, however, is not what he might have answered; the point is that because the life estate was not disclosed, the Company never had an *opportunity* to ask him questions so it might evaluate the risk associated with the dual ownership interests of the Claimant and Mr. Vollheim."). By not disclosing the event of foreclosure, Ms. Conley did not afford Tennessee Farmers even a minimum opportunity to investigate the circumstances attendant to her ownership of the Mississippi property and those surrounding the property's foreclosure. Had the fact of a prior foreclosure been disclosed, Tennessee Farmers would have been able to explore the risks that are implicated by foreclosures, and it would have been able to assess the actions Ms. Conley had taken, or failed to take, to allow the Mississippi property to go into foreclosure.[5]

Through the misrepresentation on her application, however, Ms. Conley increased the risk of loss within the meaning of Tennessee Code Annotated section 56-7-103. Knowledge that she previously had property in foreclosure would "naturally and reasonably" affect the judgment of the insurer, because as we have noted, "[i]t is only necessary to determine that the misrepresentation was sufficient to deny the insurer information which they, in good faith, sought to discover, and which they must have deemed necessary to an honest appraisal of insurability." *Johnson*, 633 S.W.2d at 488. Here, Ms. Conley does not dispute that Tennessee Farmers sought the information concerning prior foreclosures in good faith. In view of the above discussion, we accordingly affirm the trial court's judgment on this issue and turn our attention to the remaining matters raised on appeal.

## Remaining Issues

### *Attorney's Memorandum*

During the trial court proceedings, Ms. Conley sought to discover a document prepared by Tennessee Farmers' attorney. Although she moved to compel production of this document, she was met with resistance. In support of its opposition to Ms. Conley's

---

[5] Tennessee Farmers' inquiry into a disclosed foreclosure could have, among other things, cast light onto concerns related to Ms. Conley's financial condition. Although Ms. Conley places much emphasis in this appeal that she had no responsibility for the loan on the Mississippi property, it should be noted that in her deposition testimony, she stated that she understood that she could not be on the mortgage loan for the Mississippi property because of poor credit. This is something that Tennessee Farmers could have uncovered and considered in exploring the risks associated with a disclosed foreclosure.

motion to compel, Tennessee Farmers maintained that the sought-after document was protected by the attorney-client privilege and the work-product doctrine. The trial court eventually denied Ms. Conley's motion to compel.

On appeal, Ms. Conley asserts that the trial court's ruling on this issue was in error. Her brief includes some argument as to why the requested attorney memorandum should not be legally protected by the attorney-client privilege, and to a lesser degree, by the work-product doctrine, but there does not appear to be a clearly developed argument as to why the requested document itself is relevant to any of Ms. Conley's claims. As such, even assuming that we agreed that the attorney-client privilege or work-product doctrine otherwise did not apply,[6] it is unclear on what basis there is reversible error in excluding discovery access to the document. In her brief, Ms. Conley simply conclusorily asserts that she "demonstrated through [her motions to compel production] why the attorney's memorandum was necessary," but again, there is no clearly developed explanation as to this point on appeal, at least insofar as we are able to discern.[7] "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010).

---

[6] We observe that the trial court's order denying Ms. Conley's motion to compel does not specifically cite the attorney-client privilege or the work-product doctrine as a basis for its denial. Thus, Ms. Conley's stated issue—whether the trial court erred when it ruled that the document was protected from discovery by the attorney-client privilege—technically seeks redress from a specific ruling not found in the order she challenges.

[7] We would further note that in places where a kernel of an argument appears to be included concerning the need for the document, there are no citations to the record to substantiate the contentions made. For example, in arguing that it would be "unfair" to allow Tennessee Farmers to "shield" the document, Ms. Conley's brief states that Tennessee Farmers justified and defended its denial letter by invoking the attorney's document. No citations to the record are offered in support of this proposition. There is a similar failure to cite to the record concerning other asserted facts offered in support of Ms. Conley's argument about the inapplicability of the attorney-client privilege. For instance, in claiming that no privilege exists, Ms. Conley's brief references testimony of a "Mr. Caldwell." The brief itself provides no clarification about the identity of Mr. Caldwell, and there is no accompanying record reference specifically signaling where this testimony may be found. Similarly, in claiming that the attorney-client privilege was *waived*, Ms. Conley relies on "Defendant's testimony." No record references are given concerning where such "Defendant's testimony" supporting a finding of waiver can be found. The failure to provide appropriate record references on these matters also supports a finding of waiver on appeal. *See Clayton v. Herron*, No. M2014-01497-COA-R3-CV, 2015 WL 757240, at *3 (Tenn. Ct. App. Feb. 20, 2015) (citations omitted) (noting that the failure to make appropriate references to the record and to cite relevant authority in the argument section of a brief as required by Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure constitutes a waiver of the issue); *see also* Tenn. Ct. App. R. 6 (requiring that written argument shall contain "[a] statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found").

Regardless, we note that the argument found among the trial court papers is unavailing. Ms. Conley argued to the trial court that it was imperative to obtain the attorney's document in order to prove that the denial of her insurance claim was reckless. She noted that the Tennessee Farmers employee who sent the claim denial letter had learned about the falsity of her application answer through the attorney's document. It is unclear to us how Ms. Conley can maintain that the denial of her claim was "reckless"; Tennessee Farmers cannot be considered reckless for denying her claim on account of her insurance application answer regarding prior foreclosures because there was no error in concluding that her answer was a misrepresentation. As we have already noted, the answer on Ms. Conley's application for insurance was factually incorrect.

### *Racial discrimination and extortion claims*

In her brief, Ms. Conley complains that the racial discrimination claim set forth at paragraphs 15 and 21 of her amended complaint was erroneously dismissed. In support of this grievance, she argues that the claim was not a specific subject of Tennessee Farmers' motion for summary judgment. Although it does appear to be the case that Tennessee Farmers never specifically moved for summary judgment vis-à-vis the asserted racial discrimination claim, the trial court evidently reasoned that dismissal of the claim should legally follow from its conclusion on the risk of loss issue. In its order granting summary judgment, the trial court stated: "[B]ecause the policy, being voided *ab initio*, as though it never existed, the allegations of racial discrimination should also be dismissed." For the reasons stated below, we will not disturb the trial court's dismissal of the racial discrimination claim at summary judgment but affirm it on other grounds.[8] *See Hill v. Lamberth*, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001) (noting that this Court is permitted to affirm dismissal on grounds different than those cited by the trial court).

The dismissal of the asserted racial discrimination claim should be affirmed because the claim lacks merit as a matter of law. Paragraphs 15 and 21 of the amended complaint allege that Tennessee Farmers committed "an act of racial discrimination in violation of the United States and Tennessee constitutions." We would note that the amended complaint does not separately raise any discrimination claims based upon alleged violations of federal or state legislation. Ms. Conley's attempt to hold Tennessee Farmers liable for an alleged constitutional violation is legally infirm because Tennessee Farmers is not a governmental entity. "It is well-settled that constitutional guarantees restrain government conduct and generally do not restrain the conduct of private individuals." *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 718 (Tenn. 1997) (citations omitted); *see also Cagle v. Cass*, No. W2001-00760-COA-R3-CV, 2001 WL 792644, at

---

[8] We express no opinion regarding the specific reasoning adopted by the trial court in dismissing the claim, nor do we express any opinion about the specific bases for dismissal argued by Tennessee Farmers on appeal.

*3 (Tenn. Ct. App. July 6, 2001) (noting that because the alleged violator was not an employee of the state or federal government, nor could be said to be a state actor, he was incapable of violating the adverse party's constitutional rights).[9]

Similarly, the asserted extortion claim fails for lack of legal merit. We note that at oral argument, Ms. Conley's counsel acknowledged that he had found no Tennessee authority recognizing a civil cause of action for extortion. Neither have we. *See Perry v. Conley*, No. 02A019812CV00369, 1999 WL 270430, at *4 (Tenn. Ct. App. May 5, 1999) ("We know of no statutory or common law authority-except in states where statutes provide for civil penalties for the crime of extortion-which would allow Perry to recover damages for 'extortion.'"); *In re Prebul*, No. 1:11-CV-214, 2012 WL 5997927, at *6 (E.D. Tenn. Nov. 30, 2012) ("[T]here is no tort of extortion recognized in Tennesee."). Accordingly, we affirm the dismissal of Ms. Conley's extortion claim.

### Ms. Conley's Issue #7

After Ms. Conley submitted her initial appellate brief, which raised six issues for our review, she filed a motion requesting permission to file a supplement to her brief, stating that she had inadvertently failed to include a seventh issue in her original appellate submission. We granted the motion after giving it proper consideration, and on December 5, 2017, a supplemental appellate brief raising "Issue #7" was filed. Taken verbatim from Ms. Conley's supplemental brief, Issue #7 is as follows:

> Did the Circuit Court err when it ruled that even though Defendant voided Plaintiff's policy for an impermissible reason, Defendant can shield itself from liability by subsequently citing a different and permissible reason to void the policy even though Defendant would not have originally voided the policy for that reason?

As an initial matter, we observe that Ms. Conley's supplemental brief contains no citation to any legal authorities supporting her position. This is sufficient to result in a waiver of her issue. *See Belardo v. Belardo*, No. M2012-02598-COA-R3-CV, 2013 WL 5925888, at *13 (Tenn. Ct. App. Nov. 1, 2013) (citations omitted) ("This Court has repeatedly held that the failure to include citation to the record or to appropriate supporting authority in the argument section of the brief is a waiver of the issue on appeal.").

The issue of waiver notwithstanding, Issue #7 appears to be predicated on the faulty premise that a permissible reason for voiding the policy was not originally provided by Tennessee Farmers. As explained herein, it was permissible to deny Ms.

---

[9] We would additionally note that Tennessee has not recognized any implied cause of action for damages based upon violations of the Tennessee Constitution. *Bowden Bldg. Corp. v. Tenn. Real Estate Comm'n*, 15 S.W.3d 434, 446 (Tenn. Ct. App. 1999) (citations omitted).

Conley's claim on the ground that her insurance application contained a misrepresentation that increased the risk of loss, and the denial letter sent to Ms. Conley clearly relied on this basis.[10]

## CONCLUSION

For the reasons stated herein, the judgment of the trial court is affirmed. This case is remanded to the trial court for such further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE

---

[10] Additional issues were raised by Ms. Conley, with the Court's permission, in a supplemental brief filed following oral argument. The first two of these additional issues, which essentially re-argue the same issue initially raised in the first supplemental brief, specifically challenge the trial court's decision to deny a motion to reconsider that was filed by Ms. Conley following the grant of summary judgment. We find no error with respect to this mater. As previously noted, it was permissible to deny Ms. Conley's insurance claim on the ground that her insurance application contained a misrepresentation that increased the risk of loss; the denial letter sent to Ms. Conley clearly relied on this basis. The other issue raised in Ms. Conley's second supplemental brief once again challenges the dismissal of her asserted extortion claim. As we have already noted, we know of no Tennessee authority recognizing a civil cause of action for extortion.